MERCHANTS' & PLANTERS' BANK *v.* McGEHEE SPECIAL SCHOOL DISTRICT.

Opinion delivered June 17, 1929.

*Joe S. Harris* and *Bridges & McGaughey,* for appellant.

*Williamson & Williamson* and *John Baxter,* for appellee.

McHANEY, J. The facts in this case are substantially the same as in *Merchants' & Planters' Bank* v. *Hammock,* 173 Ark. 746, 12 S. W. (2d), 421, where they are rather fully set out, except as herein stated and supplemented. The amount of bonds sold was $105,000 instead of $150,000, as stated in the former opinion. The full resolution of the appellee school board is as follows:

"Whereas, the board of directors has sold $105,000 of five per cent. bonds to R. G. Helbron of Little Rock, dated March 1, 1927, to be delivered and paid for at the Bankers' Trust Company, Little Rock, Arkansas, for the sum of $99,246, one-half of said funds to be deposited with the Bankers' Trust Company of Little Rock and one-half with the Citizens' State Bank, McGehee; and whereas, at the request of R. G. Helbron, the place of delivery and deposits be changed; therefore be it resolved that the Bankers' Trust Company of Little Rock be instructed to deliver said bonds to the Merchants' & Planters' Bank, Pine Bluff, Arkansas, to be delivered on payment of the amount of $99,246 to the Merchants' & Planters' Title & Investment Company and the Simmons National Bank, said funds to be deposited with said banks to the credit of the district as follows: One-fourth with Merchants' & Planters' Bank, Pine Bluff, Ark.; one-fourth with Simmons National Bank, Pine Bluff, Ark.; one-fourth with the Citizens' State Bank, McGehee, Ark.; and one-fourth with the Bank of Commerce, McGehee, Ark.

"Said funds to be withdrawn by president and secretary of said board as needed in building and construction in practically equal amounts, leaving the balances in each bank as near the same as possible. All of said deposi-

tories to pay to said district interest on daily balances at the rate of 2 per cent. per annum. Also that the funds in each of said depositories shall be secured as required by act No. 182 of the Acts of 1927. Resolutions adopted unanimously.''

The Merchants' & Planters' Title & Investment Company, an affiliated company with appellant, on May 23 wrote appellee the following letter:

''Mr. O. C. Gorham, President,
McGehee School District,
McGehee, Arkansas.

''Dear sir: We have today taken up and paid for the Merchants' & Planters' Bank of Pine Bluff the $105,000 5 per cent. bond issue of the McGehee School District, dated March 1, 1927, the amount we paid being $99,246. This action was on behalf of ourselves and the Simmons National Bank of this city, with whom we are partners in the business. The Merchants' & Planters' Bank will advise you relative to the distribution of this money.''

On the same date appellant wrote appellee as follows:

''Mr. O. C. Gorham,
c/o McGehee Special School District,
McGehee, Arkansas.

''Dear Mr. Gorham: Conforming with resolutions of your board under date of May 17, we have today delivered to the Merchants' & Planters' Title & Investment Company $105,000 of 5 per cent. bonds of your school district. They have paid us the sum of $99,246 therefor, and we have deposited the proceeds as follows: With Merchants' & Planters' Bank, P. B., $24,811.50; with Bank of Commerce, McGehee, $24,811.50; with Simmons National Bank, P. B., $24,811.50; with Citizens' State Bank, McGehee, $24,811.50.

''For your files I am inclosing herewith duplicate deposit slips covering each transaction. We have placed in escrow $25,000 of the above bonds to protect the deposit we have placed in our bank, for your account.

"Assuring you we are glad to handle this matter for you, I remain, "Yours very truly,

"Jim McLellan, Cashier."

The school board took the above-mentioned duplicate deposit slip to the Bank of Commerce of McGehee, and was credited on its books with the amount thereof, $24,811.50. The above resolution of the school board was adopted at the suggestion of the Simmons National Bank of Pine Bluff, one of the two purchasers of the bonds, and the school board did not know what the provisions of act 182 of 1927 were. The real purpose of the resolution, so far as the board was concerned, as testified to by Mr. W. A. McGehee, member of the board, was to give the Citizens' State Bank of McGehee some of this deposit, instead of seeking additional security for the funds, Mr. Thompson, who became a member of the board and is its secretary, being cashier of that bank. Other members of the school board testified that the purpose was to secure the deposit. Shortly after the deposits had been made in the four banks, the board discussed as to whether the banks had qualified under act 182, and the matter was referred to the president and secretary, who were authorized to see that the banks did give security in accordance with act 182. These gentlemen called on the Bank of Commerce to give security, shortly after the deposit was made, by depositing the kind of bonds mentioned in act 182 of 1927. Mr. Cleveland, the cashier, advised them the bank had no bonds, but offered its bills receivable. They found out later that they could not take the notes of the bank as security for the deposit, and Mr. Cleveland said he would undertake to get appellant to lend his bank municipal bonds by a deposit of his bills receivable as security, and give the board these bonds. The board waited on him to do this, calling on him every few days about the matter, and they were encouraged to believe that he would do so. Mr. Stone, president of the board, stated that on June 2 he talked to appellant about the matter, but did not remember what was said. He again called appellant on June

11, and was under the impression that appellant had the bonds and was going to put them up for the Bank of Commerce, but on June 24 he called appellant again and was advised it would not put up the bonds, and suggested they move the deposit. On June 25 the board drew a draft on the Bank of Commerce for the balance of the account to the credit of the school district, and deposited it with the Citizens' Bank, who presented the draft to the drawee, and received from it a draft on appellant for the amount of the balance. Payment of this draft was refused by appellant, as it overdrew the account of the Bank of Commerce. When advised that its draft on appellant had been refused, the Bank of Commerce closed its doors, and the Bank Commissioner took charge. Prior to the closing of its doors, the Bank of Commerce had paid one check of the school district drawn on this fund for approximately $1,000. The school district presented its claim to the Bank Commissioner, which was allowed as a common creditor, and has been paid certain dividends, reducing the amount in such sums.

The court found against appellant, and entered a decree accordingly. In doing so we think the court erred. Act 182 of 1927, p. 634, provides that improvement districts, before depositing their funds in any bank, trust company, etc., shall require of such depository a surety company bond conditioned for the prompt payment of all funds of such district. It further provides that, in lieu of the surety bond, the depository may deposit with some other bank, in escrow, the bonds mentioned in the act, to guarantee the repayment of the funds to the district or to its order. School district funds are not included in this act. In *Ark. & La. Highway Imp. Dist.* v. *Taylor,* 177 Ark. 440, 6 S. W. (2d) 538, we held that the above act did not authorize a bank to secure an improvement district deposit by a deposit of assets other than is mentioned in the act, and that a pledge of its bills receivable as security for the district's deposits was unauthorized and void. We think this case in principle

controls the case at bar in so far as the attempt to require the Bank of Commerce to pledge its assets to secure the deposit of the school district is concerned, and that, had it done so, the Bank Commissioner could, on taking charge for liquidation, have successfully maintained an action to recover the unauthorized misappropriation of such assets, just as was done in the above-mentioned case.

Furthermore, we are of the opinion that the above resolution of the school board did not constitute appellant the agent of the district to see that all depository banks put up collateral before distributing the fund in accordance with the resolution, nor direct it to do so. The resolution of the board on its face authorizes the Merchants' & Planters' Bank to accept from the Bankers' Trust Company the bonds in question, and to deliver them to the Merchants' & Planters' Title & Investment Company and the Simmons National Bank, on the payment to it of $99,246, to be deposited in the four banks named. It does not in terms direct appellant bank to make these deposits, but it actually did make them. The last paragraph of the resolution authorizes the president and secretary of the board to withdraw the funds from the different banks "as needed in building constructions in practically equal amounts, leaving the balances in each bank as nearly the same as possible." That sentence is unquestionably a direction to the officers of the board, and has no reference to any duty of appellant bank. The next sentence in that paragraph provides for the depositories to pay the district interest on daily balances at 2 per cent. That unquestionably constitutes an instruction to the officers, and has no reference to appellant's duties in connection with such deposits. The last sentence provides "that the funds in each of said depositories shall be secured as required by act No. 182 of the Acts of 1927." Coming in the same paragraph as the two previous instructions to the officers of the board, we think this sentence also refers to the duties of the officers of the board, and not to any duty of appellant

bank. In other words, it made it the duty of the officers of the board to see that each bank gave security for its portion of the deposits, and that the resolution therefore did not authorize or direct appellant to assume this undertaking. That appellant so construed the resolution is shown in its letter of May 23 to the school district, heretofore quoted. This letter advised the school district that it had deposited the proceeds of the sale of the bond issue with its own bank and the other three banks mentioned, and inclosed duplicate deposit slips covering each deposit. It furthermore particularly advised the board that it had "placed in escrow $25,000 of the above bonds to protect the deposit we have placed in our bank, for your account." If appellant had undertaken to obtain bonds from the other depositories to secure their deposits, it would undoubtedly have mentioned this fact to the board in this letter. The board therefore was bound to take notice from this letter that only the amount of its deposit was secured, so far as it was concerned. We think the evidence shows that the board construed the resolution just as appellant bank did. Only two or three days later it took up with the cashier of the Bank of Commerce the question of its collateral to secure this deposit, and the cashier asked for and was given time in which to do so. The Bank of Commerce then began negotiations with appellant to secure from it a loan of bonds to be deposited in escrow to secure its deposit, after it had offered and the board had refused to accept a deposit of bills receivable. The board thereafter continued negotiations with the Bank of Commerce in an effort to get the matter adjusted, while it in turn was negotiating with appellant to assist it, and not until the board's letter to the Merchants' & Planters' Bank, under date of June 17, was it advised that the board was expecting it to see that the Bank of Commerce secured its deposit. Even at that time it could have withdrawn its deposit from the Bank of Commerce had it seen proper to do so, but the board waited until eight days later, June 25, to attempt to withdraw its deposit, during all of which time

it was still hoping that the Bank of Commerce would make arrangements with appellant for the necessary bonds. Again, the school board drew a check for $967.35 against its deposit in the Bank of Commerce, well knowing at the time that it had not secured its deposit, thereby ratifying the action of appellant in making the deposit without security.

After a careful consideration of all the evidence and the circumstances surrounding the transaction, we have reached the conclusion that the findings and decree of the chancery court, holding appellant liable for the balance due on this deposit, are against the preponderance of the evidence, and that the judgment must be reversed.

The judgment will therefore be reversed, and the cause dismissed here.