ARKANSAS-LOUISIANA HIGHWAY IMPROVEMENT DISTRICT *v.* TAYLOR.

Opinion delivered May 28, 1928.

*Rose, Hemingway, Cantrell & Loughborough, Ed Trice* and *William L. Baugh, Jr.,* for appellant.

*John Baxter,* for appellee.

MEHAFFY, J.   This suit was brought by the appellee, Walter E. Taylor, Bank Commissioner, to recover certain notes, assets of the Desha Bank & Trust Company, and pledged by the Desha Bank and Trust Company to the Arkansas-Louisiana Highway Improvement District Commission to secure the public funds which the commission had on deposit in said bank, and alleged that the hypothecation of such assets by the bank to secure the deposit of such funds was illegal and void as against the other creditors and depositors of said bank, and asked that the notes be returned to the appellee, so that collection might be made and the proceeds distributed *pro rata* to the depositors.

The appellant, Arkansas-Louisiana H i g h w a y Improvement District, is a road improvement district created by special act of the General Assembly, and the Desha Bank & Trust Company is a corporation organized under the laws of the State of Arkansas for the purpose of doing a banking business and receiving deposits.

On July 21, 1927, the assets of the Desha Bank & Trust Company were insufficient to discharge its obligations and liabilities, and the Bank Commissioner took charge for the purpose of liquidation.   Prior to the closing of said bank, the improvement district had on deposit in said bank approximately $5,000, said funds being placed in said bank as a general deposit and checking account.   A short time prior to the time the Bank Commissioner took charge of the Desha Bank & Trust Company, it delivered to the treasurer of the improvement district certain notes, one for $3,147.40, one for $1,215.25, and one for $3,500.   Said notes were listed as the assets of the Desha Bank & Trust Company at the time they were delivered to the improvement district, and they were delivered to the district for the purpose of securing a general deposit in the bank.   Demand was made by the Bank Commissioner, and the improvement district refused to return said notes.

Appellee also alleged that the bank was insolvent at the time these notes were given to the improvement district to secure the deposit that was already in the bank, and that the insolvency was known to said district.

The answer of the improvement district denied all of the material allegations of the complaint, and the case was tried upon the following agreed statement of facts:

"It is agreed by John Baxter, representing the plaintiff, and Ed Trice, representing the Arkansas-Louisiana Highway Improvement District, that the only issue to be determined in this case is the right of a bank to secure deposits by pledging its own assets as security for said deposits.

"It is agreed that, on or about the first day of July, 1927, the Arkansas-Louisiana Highway Commission had on deposit in the Desha Bank & Trust Company approximately $6,000. That, prior to June first, the Arkansas-Louisiana Highway Commission had funds on deposit in numerous banks in Southeast Arkansas, and all banks were notified by the commission that they would be expected to file with the commission surety bonds covering said deposits in each respective bank prior to June 10, 1927, when act 182 of the Legislature of 1927 took effect. That for some reason the Desha Bank & Trust Company failed to file the surety bond, as requested, and had not filed the surety bond up to July 1, 1927, and on July 1, in lieu of said surety bond, the bank offered and the Arkansas-Louisiana Highway Commission took the notes described in the plaintiff's complaint for the deposit the commission had in said bank, said notes being assets of said bank at the time they were hypothecated.

"It is further admitted that, if said notes had not been pledged or given to the commission, a draft would have been drawn on said bank for the payment of said funds.

"It is further admitted that the Desha Bank & Trust Company closed its doors by order of the Bank Department on July 21, 1927, and that since that time the assets

of said bank have been in charge of Walter E. Taylor, as Bank Commissioner for the State of Arkansas.

"It is further agreed that the Desha Bank & Trust Company accepted deposits and paid checks until it was closed by the Bank Commissioner.

"It is admitted that H. Thane was president of the Desha Bank & Trust Company, and that a resolution was in effect in said bank authorizing the president, vice president or cashier to hypothecate and pledge notes, mortgages, and other assets as collateral security for loans.

"It is further admitted that the funds deposited in said bank were the property of the Arkansas-Louisiana Highway Improvement District, the same being public funds of said district."

Appellant's first contention is that banks in Arkansas have always had a right to pledge that portion of their assets proper to secure depositors; and that, second, whether they did have the right prior to the passage of act 182 of the 1927 Legislature, after the passage of that act the bank had the power. And appellant also states that it and the appellee are agreed in the statement of the very narrow issue involved in this appeal. Both appellant and appellee state that the only issue in the case is: Did the Desha Bank & Trust Company, on July 1, 1927, have the power to pledge that portion of its assets proper to secure the public funds which the Arkansas-Louisiana Highway Improvement District had on deposit at said bank?

Act 182 of the 1927 Legislature provides that commissioners, treasurers and other officers of all road, drainage, levee, bridge, street, sewer, paving and all other improvement districts of this State, having in their charge the moneys and funds of such districts, shall, before depositing same in any bank, trust company, savings association or with any other person or company, require of such depository a good and sufficient bond, signed by some surety company authorized to do business in the State of Arkansas, conditioned for the apt and full

and complete payment of all funds so deposited, together with the interest thereon. It is further provided, however, that the said depository may, in lieu of said bond above mentioned, deposit United States bonds, or notes of the State of Arkansas, the bonds of any legally organized school, levee, drainage, or other improvement district of the State of Arkansas, which bonds and all proceedings concerning the issuing of same have been approved by some reputable attorney, who is recognized by the bond buyers of the United States as such, as collateral security, and such bonds shall be deposited in escrow with some other bank than the depository of the funds of such district, to be delivered to such district only on failure of the depository of such funds to repay the said funds to the district or to pay same on the order of the district.

Said act 182, as will be seen, expressly provides that the depository may, in lieu of giving the surety bonds provided for in the act, deposit United States bonds and other bonds therein mentioned. The securities authorized by said act are specifically mentioned, and the securities involved in this case are not included in the kind of bonds mentioned in the statute.

It is earnestly urged that the power to contract for guaranteeing or securing depositors arises from the nature of the relation existing between the banks and their depositors. The relation created between the bank and the depositor by the receipt of deposits is that of debtor and creditor. And act 182 expressly authorizes improvement districts, when they deposit money with banks, to require either a surety bond or the kind of bonds mentioned in the act in lieu of the surety bond. The Legislature could have authorized banks to pledge their assets to secure deposits, but it has not done so.

The Kentucky court said:

"When deposits are received, the bank becomes a debtor to the depositor for the amount of the deposits, and, if it agrees to pay interest, for that also. These are the only terms and conditions regulating deposits

and the payment of interest, and if, in addition to this, the bank may pledge its assets to the depositor, then it may exercise another most extraordinary power, which is not conferred by article 2 and not necessary for the conduct of its business of receiving deposits and paying interest thereon. It would be a dangerous implication to deduce from the words of the statute, which should rather be construed strictly for the benefit of the stockholders and protection for the depositors. The exercise of such a power is therefore clearly beyond the terms of the law or any reasonable or necessary implication which the court would be authorized to deduce from the language of the statute, and would tend to lessen the usefulness of the banks as great public institutions by destroying public confidence in them. Such a practice, if indulged and authorized, might work great injustice and inflict financial loss, not only on the depositors, but on the stockholders as well. Large depositors, if secured, might absorb the greater part of the assets of the bank and inflict loss upon unsecured depositors and financial ruin upon innocent stockholders under the double liability law.'' *Commercial Bank & Trust Co.* v. *Citizens' Trust & Guaranty Co. of West Virginia,* 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166.

If a bank could pledge any portion of its assets to secure deposits, it could pledge all of its assets, because, if the authority to pledge its assets exists at all, it is without limit. And a few large depositors might be able to secure the entire assets of the bank as a pledge for their deposits, to the injury of every depositor and the stockholders. The act relied on should be strictly construed for the benefit of the stockholders and protection of the depositors, and the power to deposit assets by a bank should not be held to extend beyond the express authority given in the statute.

Learned counsel have referred to and discussed many authorities, but the authorities are not in harmony, and it would serve no useful purpose to review or discuss the authorities relied on. We adopted the view expressed

by the Kentucky court in the case above referred to, and it would therefore be useless to discuss the authorities taking the opposite view.

While it is true that, when deposits are received by a bank the bank becomes the debtor to the depositor for the amount of the deposit, we think there is a difference between this debt and a debt created by the bank in borrowing money, although in both instances, that is, where one deposits money in the bank and where one makes a loan to the bank, the relation of debtor and creditor exists, and while the bank may pledge its bills receivable to secure loans, it does not follow that it may do so to secure deposits.

"The doctrine that there is no difference between a loan and a deposit we cannot accept in all its implications. It is true that in law the two transactions have many characteristics in common; but so have other business deals which, nevertheless, are not identical in all their legal incidents. The striking fact remains, a fact which this court cannot ignore, that a real difference between a deposit and a loan has always been assumed, as a matter of custom, in the banking business itself, and in all legislation dealing with the subject since statehood.

"We are warranted in taking judicial notice of the fact that, in the banking business, it has been and still is customary to treat loans and deposits as distinct and essentially dissimilar transactions. Without going into details, this fact is evidenced by methods of bookkeeping and of making reports of the financial condition of the bank, both to private individuals, through the press or otherwise, and to the public examiner. Originally, one of the main functions of a bank was to receive money deposits or valuables for safekeeping, and this early concept of a bank's primary office has, in a large measure, been recognized by custom in the business, and has influenced the course of legislation upon the subject. * * * If the power exist to pledge bills receivable in order to secure a general deposit, it means, in all ordinary circumstances, that its repayment would be insured by the

other and unsecured depositors of the bank, for, manifestly, a sale of the pledge, in the event of insolvency, would reduce the assets available to pay general depositors by the amount or value of the securities. The principle of subrogation would in but few, if any, cases be efficacious to avert this result. It is difficult to discover any principle on which the receiver of the bank could recover from the surety for the benefit of the depositors, after the obligation to pay the public deposit has been discharged by a sale of the pledge; and in case the public depositor proceeds first against the surety on the bond, the surety would have 'the benefit of every security' held by the principal, and it would be subrogated to the rights of the public corporation in the securities. * * * If the power exist, it is without limit or qualification in the statutes; and there is no requirement, legal or administrative, which removes the mantle of absolute secrecy from the transaction. The bank could—as every business man knows has been done on occasion—make the pledge agreement, keep the assets in its possession, and execute its receipt therefor to the favored depositor, all without a trace on the records of the corporation showing the transaction which actually took place." *Divide County* v. *Baird,* 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296.

Of course the bank could pledge the assets mentioned in act 182, the Legislature having authorized improvement districts to receive pledges of this kind from the bank, but the power to pledge the assets of the bank should not be extended beyond that expressly authorized by the Legislature.

Having reached the conclusion that the correct view of the law is stated in the decisions to which we have called attention, it would unnecessarily prolong this opinion and serve no useful purpose to review other authorities. We think the law as announced in the two decisions to which we have called attention is the better rule, and, adopting that rule, it becomes unnecessary to

discuss the other questions discussed by counsel in their brief.

The decree of the chancery court is therefore affirmed.