ARKANSAS COUNTY ROAD IMPROVEMENT DISTRICT No. 5 *v.* TAYLOR.

Opinion delivered March 14, 1932.

*John W. Moncrief* and *R. E. Wiley,* for appellant.
*Coleman & Gantt* and *C. E. Condray,* for appellee.

SMITH, J. This cause was heard in the court below upon an agreed statement of facts from which we copy the following essential recitals.

The Home Bank of DeWitt suspended business on January 4, 1929, and its assets are now in charge of the State Banking Department for purposes of liquidation. At the time of the bank's suspension, Arkansas County Road Improvement District No. 5 (a road improvement district created by special act of the General Assembly) had on deposit $19,799.21, which was a general deposit subject to check.

The deposit was made pursuant to the supposed authority conferred by act 182 of the Acts of 1927 (Acts 1927, page 634). At the time of the deposit the bank held certain warrants drawn by the board of directors of Special School District No. 1 of DeWitt, Arkansas, on the county treasurer in the sum of $10,572.59.

It is recited in the agreed statement of facts that "the sum of $11,699.80 has been paid on the deposit by delivery of $9,000 in U. S. bonds which had been separately pledged on June 22, 1927, to secure $9,000 of the aforesaid deposit, and by a twenty-five per cent. dividend by the successor to and purchaser of the assets of the Home Bank of DeWitt, leaving unpaid $8,099.41 of said deposit, and the school warrants aforesaid are worth their face value of $10,572.59, and thereby have excess value of $2,473.18 over the unpaid balance of the deposit."

The school district was a legally organized school district under the laws of the State of Arkansas, and the deposit was made under a contract for the payment of three per cent. interest on daily balances.

The deposit was made under a written contract whereby the school warrants and the Government bonds

were deposited in the First National Bank of DeWitt, to be delivered to the road improvement district upon the failure of the Home Bank to repay the funds upon the check or order of the road district.

The school warrants deposited in escrow had been drawn by the school district for teachers' salaries, janitor service, and other small necessary supplies. The school warrants were in regular form and such as are in general use throughout the State, and were valid orders for the payment of the indebtedness of the school district upon presentation to the county treasurer out of any funds in his hands belonging to the school district, and would have been paid upon presentation to the county treasurer when settlement had been made by the collector of taxes collected for the school district.

Upon these facts it was decreed that the State Bank Commissioner "is the owner of all the school warrants described in the pledge, * * * and that all said school warrants be surrendered and delivered by the escrow agent, First National Bank of DeWitt, to Walter E. Taylor, State Bank Commissioner, and be held by him free of all claim of the said Arkansas County Road Improvement District No. 5, or any of the other parties to this action," and this appeal is from that decree.

It is said that the decree from which this appeal comes was rendered upon the authority of the case of *Arkansas-Louisiana Highway Improvement District* v. *Taylor,* 177 Ark. 440, 6 S. W. (2d) 533, and in our opinion the law there announced was correctly applied to the facts herein stated.

In that case the Bank Commissioner brought suit to recover the assets of an insolvent bank which was in his hands for the purposes of liquidation. The insolvent bank had, a short time before closing its doors, pledged certain notes payable to its order for the purpose of securing a general deposit made by a road improvement district. In that case, as in this, the deposit had been made under the supposed authority conferred

by act 182 of the Acts of 1927, *supra,* and that case depended, as does this one, on the construction of that act.

Section 1 of this act provides that the officers of road and other improvement districts shall, before depositing money belonging to such districts in any bank, require a surety bond, conditioned for the apt, full and complete payment of all funds so deposited, together with interest thereon. It was provided, however, that in lieu of such surety bond the bank might "deposit United States bonds or notes of the State of Arkansas, the bonds of any legally organized school, levee, drainage, or other improvement district of the State of Arkansas, which bonds and all proceedings concerning the issuing of same have been approved by some reputable attorney who is recognized by the bond buyers of the United States as such, as collateral security, and such bonds shall be deposited in escrow with some other bank than the depository of the funds of such district to be delivered to such district only on failure of the depository of such funds to repay the said funds to the district or to pay same on the order of the district."

It was held in the former case, above cited, that this act should be strictly construed for the benefit of stockholders and depositors, and that the power to deposit assets as collateral by a bank should not be held to extend beyond the express authority there given by the act. This holding was made upon the view, there expressed, that: "If a bank could pledge any portion of its assets to secure deposits, it could pledge all of its assets, because, if the authority to pledge its assets exists at all, it is without limit. And a few large depositors might be able to secure the entire assets of the bank as a pledge for their deposits, to the injury of every depositor and the stockholders. The act relied on should be strictly construed for the benefit of the stockholders and protection of the depositors, and the power to deposit assets by a bank should not be held to extend beyond the express authority given in the statute."

The Bank Commissioner was permitted in that case to recover the assets which had been pledged contrary to the provisions of the act.

The attempt is made to distinguish that case from the instant case, upon the ground that the warrants of the school district are, in legal effect, the same as the bonds of the district, and that as the authority is conferred to pledge bonds to secure deposits, the authority also exists to pledge school warrants for the same purpose. The correctness of this contention is the controlling question in the case.

The opinion in the case of *Gaster* v. *Dermott Special School District,* 184 Ark. 536, 42 S. W. (2d) 990, is decisive of this question. There a school district sought to refund both its bonded and floating indebtedness under the authority of §§ 59 and 60 of act 169 of the Acts of 1931, page 476.

By § 59 of this act all school districts are authorized to borrow money for certain designated purposes and "for funding any indebtedness created for any purpose and outstanding at the time of the passage of this act, as provided in this act."

Section 60 of the act of 1931 reads as follows: "No bonds shall be issued at any time that would make the total of outstanding bonded indebtedness of the district at that time, exclusive of interest, exceed seven per cent. of the assessed valuation of the real and personal property in the district as shown by the last county assessment. This shall not prohibit bond issues refunding present bonded indebtedness that exceeds seven per cent."

It was there held that the Dermott district might issue bonds in excess of seven per cent. of the last county assessment only for the purpose of refunding the bonded indebtedness of the district, and that bonds could not be issued in excess of the seven per cent. limitation for the purpose of paying the floating indebtedness of the district evidenced by school warrants, such as those pledged

to the Home Bank in the instant case. It was there said: "Here, under the allegations of the complaint, the school district has outstanding thousands of dollars of warrants, issued for teachers' salaries and other current expenses, attached to notes given for this borrowed money, and, while this is indebtedness of the district, it is not bonded indebtedness, and there is therefore no authority to issue bonds to cover those debts, for the reason that the district has now outstanding bonds in excess of seven per cent. of the assessed value of the property of the district."

School bonds and school warrants are not synonymous terms. The characteristics of each are well known, and so also is the difference between them.

In the case of *Shelley* v. *St. Charles County Court and Another*, 21 Fed. Rep. 699, Mr. Justice BREWER (later an associate justice of the Supreme Court of the United States) said: "There is a vast difference between bonds and warrants. Warrants are general orders payable when funds are found, and there is propriety in the rule providing that they shall be paid in the order of presentation, the time of presentation to be indorsed by the treasurer on the warrants. But bonds are obligations payable at a definite time, running through a series of years. They are payable when the time of their maturity arrives, independent of any presentation."

The obligations of school districts which the act of 1927, *supra,* authorizes the banks to use as collateral security are bonds, "which bonds and all proceedings concerning the issuing of same have been approved by some reputable attorney who is recognized by the bond buyers of the United States as such." These bonds have a defined security behind them, and, with the interest thereon, are payable at fixed definite periods, whereas the ordinary school warrant is payable on presentation when funds for that purpose are available. These school warrants are not ordinarily subjected to that scrutiny which precedes the approval of a bond issue. The Legislature

evidently intended to require, and has required, a higher form of security than a mere school warrant, and the deposit in question was not therefore authorized by the act of 1927. This being true, there was no authority in law for the pledge, and the opinion in the former case, above cited, applies and sustains the decree here appealed from. It is therefore affirmed.