(No. 22673

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE WIERSEMA STATE BANK.—(ADOLPH S. HELMQUIST, Receiver, Appellee, *vs.* THE FERNWOOD PARK DISTRICT, Appellant.)

*Opinion filed June 14, 1935—Rehearing denied October 2, 1935.*

76

WILSON, J., took no part.

HARRIS, REINHARDT & BEBB, (HERBERT BEBB, and EDWARD BARRY, of counsel,) for appellant.

McFARLAND, MORGAN & McFARLAND, (LEONARD W. STEARNS, of counsel,) for appellee.

CARTER PIETSCH, and MORRISSEY & MORRISSEY, *amici curiæ*; THOMAS S. WELDON, and BARRY & BARRY, also *amici curiæ*.

Mr. JUSTICE JONES delivered the opinion of the court:

Adolph S. Helmquist was appointed receiver of the closed Wiersema State Bank. He filed a petition in the superior court of Cook county to declare invalid a pledge made by the bank of certain assets to secure the deposit of the Fernwood Park District and for an order to return to petitioner the securities deposited in escrow with the Chicago Title and Trust Company. The contracts for the pledge and escrow were executed prior to the closing of the bank. The petition alleges that the president and cashier of the bank were without power to enter into the arrangement and it was therefore *ultra vires* and void, and that it effected a preference not sanctioned by statute, which would work great injustice and inflict financial loss upon the unsecured creditors and enable large depositors to absorb the assets. The park district filed an answer and cross-petition denying the invalidity of the transaction and praying for an order entitling it to the possession of the securities. The cause was submitted on the pleadings. The trial court held the pledge *ultra vires* and void and ordered the securities

to be turned over to appellee. Upon an appeal to the Appellate Court for the First District the decree was affirmed. The cause is before this court on a certificate of importance and appeal granted by the Appellate Court.

Appellant claims that this court is committed to the doctrine that State banks have the power to pledge assets to secure deposits, and in support of that proposition relies upon *Ward* v. *Johnson,* 95 Ill. 215. In that case the bank was organized under a charter which expressly authorized it to make special regulations in reference to deposits as well as to trust funds and savings accounts. Pursuant to that authority the bank set up an "investment department" which issued "investment certificates" in the denomination of $100, bearing interest and redeemable either in cash or in substituted certificates. The bank transferred to a trustee, for the benefit of the investors, certain promissory notes secured by real estate mortgages. Afterwards the bank failed, and the receiver brought suit to compel the trustee to deliver to him those securities so that they might be used for all the creditors of the bank. This court held that the bank had created an investment department as one of its agencies and by its charter was authorized to agree upon terms with persons desiring to make deposits or loan money and give for the sums its notes or certificates secured by pledge. It was also held that the general creditors not thus secured were not entitled to share in the proceeds of the securities until the investors had been paid. The case was decided at the May term, 1880, of this court, prior to the enactment of the first general law regulating banks. It is urged that the legislature, in enacting the Banking act of 1887 intended to adopt the construction given the prior special charter in the *Ward case.*

The general rule is, that where terms used in the statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments or

re-enactments of the statute, they are to be understood and interpreted in the same sense theretofore attributed to them by the court unless a contrary intention of the legislature is made clear. The judicial construction becomes a part of the law, and it is presumed that the legislature in passing the law knew such construction of the words in the prior enactment. (*Village of Glencoe* v. *Hurford,* 317 Ill. 203; *People* v. *Illinois Central Railroad Co.* 314 id. 373.) But the judicial construction placed upon a specific provision of a statute prior to the enactment of a general law upon the same subject is not controlling where the two acts are essentially dissimilar. (*Manns* v. *Marinette and Menominee Paper Co.* 205 Wis. 349, 238 N. W. 624; 59 Corpus Juris, sec. 625, p. 1061.) The bank's special charter in the *Ward case* specifically authorized the making of special regulations in reference to trust funds, deposits or savings. For that reason it was held that the bank was authorized to contract and agree with persons desiring to make deposits or loan money as to the terms, which in that case included the pledge of securities. No such specific power is embraced in the general Banking act. The judicial construction applied to the special power in the bank's charter is not to be interpreted as being a part of the later general law, which omitted such special power, although both acts contained several other provisions which are substantially alike.

There is another reason why the *Ward case* is not applicable to the facts in this case. After enumerating the express charter powers, which included the power to receive deposits, to loan money, and to make special regulations in reference to trust funds, deposits or savings, we said: "In addition to these express powers there can be no doubt that such corporations possess, also, the implied power to borrow money. * * * It will not, therefore, be important to determine whether the certificate holders, claiming under the trust deed, are to be regarded

as having made deposits or loans for which their certificates were obtained, for in the one case the requisite power is expressly given to the corporation by its charter, and in the other case it possesses the power by necessary implication. Nor can the right of the corporation to assign or mortgage negotiable instruments which it is authorized to take be questioned. * * * The corporation was authorized to contract and agree with persons desiring to make deposits or loan money as to the terms. It might execute its bond, note or certificate as evidence of the indebtedness, and secure the same by pledge or chattel mortgage, or note, securities, etc., or by real estate mortgage or trust deed, just as should be mutually agreed. * * * The business is simply that of the bank obtaining money, and so far as the public was concerned, presumably needed in its business, and securing it by a trust deed, upon terms mutually satisfactory to the respective parties in interest. The name is not of the slightest consequence. The transaction itself, individually considered, is neither unusual nor extraordinary." Although certain expressions in the language quoted lend color to the contention that it sanctioned the pledge of assets to secure deposits, such expressions are not to be isolated and considered as establishing a general rule not germane to the issue presented. At the outset of the opinion it is stated that the principal issue was whether or not the bank had power to borrow money and issue investment certificates therefor secured by trust deed. The transactions were not treated as deposits but as loans to the bank, and the opinion was based upon that state of facts.

Appellant claims that the enactment of the Banking act of 1919 and the act relating to deposits by the State Treasurer at the same session of the legislature shows an intent that the Banking act should confer the power in controversy, and that subsequent legislation consistently recognizes that intention. A consideration of the provisions and

the history and effect of the several statutes upon the subject becomes important to the inquiry.

Prior to the passage of the first general Banking act in the year 1887 there were but few statutes that pertained in any way to the banking business. As late as 1874 the only statute safeguarding the interests of those depositing money in a bank was section 76 of the Criminal Code, by the terms of which fraudulent conversion of a deposit was declared to be larceny. The need of protecting depositors became increasingly apparent, and in 1879 another statute was enacted embracing a practically identical provision. It further classes the receiving of deposits while knowingly insolvent as embezzlement, prohibits a savings bank from loaning a deposit or trust fund to any of its officers, and prohibits banks or individuals receiving savings deposits or trust funds from guaranteeing any bond, note or other evidence of indebtedness of another person or corporation. At the same session of the legislature a statute regulating the duties of receivers and assignees was enacted, but it had no effect upon the functions of going banks or their officers.

The general Banking act enacted in 1887 provided that it shall be lawful to form banks and banking associations for the purpose of discount and deposit and to buy and sell exchange and do a general banking business, excepting the issuing of bills to circulate as money, with power to loan money on personal and real estate security and to accept and execute trusts. Several regulatory provisions were prescribed. Amendments not necessary to be considered here were made in 1879, 1889 and 1907. In 1917 private banking was made unlawful. The general act of 1887, as amended, was repealed and superseded by the act of 1919. (Laws of 1919, p. 224.) With its subsequent amendments the latter act is still in force. As amended in 1929 the purposes for which banks and banking associations may be organized are identical with those enumer-

ated in the act of 1887, with the added provision that such banks and associations shall be subject to all the provisions of the act. The regulatory provisions prescribed by former acts and amendments were broadened and extended. Briefly summarized, the pertinent regulations are that banks organized under the act are bodies corporate and politic. They may carry a banking house as an asset but no other real estate, except such as is acquired in the collection of debts, which may be held for not longer than five years. Branch banking and private banking are prohibited. Loans to one person are limited to fifteen per cent of the capital and surplus and cannot exceed twenty-five per cent of the deposits. Loans to officers and employees must be approved in amount and security by the board of directors. Banks may not operate with impaired capital. Capital may not be withdrawn in the form of dividends or otherwise. By the 1929 amendment of section 11 a receiver is empowered, under the direction of the Auditor of Public Accounts, to redeem or take down collateral hypothecated by a bank "to secure its notes or other evidences of indebtedness." He is required to deposit money collected by him in any State or national bank selected by the Auditor, "who shall require of such depository satisfactory securities or satisfactory surety bonds" for its safekeeping and prompt payment. These provisions were continued in the amendment of 1932. Laws of 1932, Fourth Special Sess. p. 3.

At the 1919 session the General Assembly adopted an act relating to deposit of State moneys. Section 10 of the act provides: "No moneys in the State treasury shall be deposited in any bank approved as a depositary under the terms of this act until such bank shall have deposited securities with the State Treasurer equal in market value to the amount of moneys deposited." (Laws of 1919, p. 954.) By an amendment enacted in 1933 (Laws of 1933, p. 1103,) the State Treasurer was authorized to enter into such agreements with depositary banks.

At the 1933 session the act of 1911, which required State officers and other arms and agencies of the State government receiving moneys for or on behalf of the State to pay the same quarterly into the State treasury, was amended by requiring such payments to be made not later than the next day after receipt. Provisions were added authorizing such officers, arms and agencies to demand and receive a bond and securities from any bank or depositary employed by them, with power to dispose of collateral in case of default. Laws of 1933, p. 1082.

In 1932 (Laws of 1931-32, First Special Sess. p. 61,) a statute was enacted providing that no action shall be brought against a treasurer or custodian of public funds on deposit in a closed bank within two years after the closing unless he has received all or part of the funds from the officers or receiver, or from the sale or disposition of any securities pledged for re-payment of such funds, and only as to such amounts so received.

Section 23 of the act of 1933 consolidating the park districts of the city of Chicago into one district known as the Chicago Park District, (Laws of 1933, p. 725,) provides that no funds of the district shall be deposited in any bank until such depositary shall furnish a bond or deposit securities equal in market value to the amount or amounts to be deposited. Depositary statutes relating to the several political subdivisions of the State are important to be considered. Section 5 of the act of 1905, (Laws of 1905, p. 105,) relating to the city of Chicago, requires that a depositary of city funds shall furnish a bond in such sum and with such securities as shall be approved by the city council and discharges the city treasurer from liability for funds so deposited.

At the first special session of the legislature in 1932 several statutes providing for the selection of depositaries for the political divisions hereinafter named were amended or first enacted with identical requirements that no bank

shall act as a depositary for funds of the subdivision until it shall furnish copies of the last two sworn statements required to be furnished the Auditor of Public Accounts or the comptroller of currency, and while so acting shall furnish copies of all similar reports required of it, the deposits not to exceed seventy-five per cent of the bank's capital and surplus, and the treasurer of the subdivision to be discharged from liability for such deposits within the limitation. The political subdivisions for which such laws were enacted and the respective pages of the 1931-32 special session laws at which such acts may be found are grouped for convenience as follows: Park districts in counties under township organization, p. 62. Cities: Amendment of section 9 of article 7, (act of 1872,) p. 18; amendment of act of 1911, (Laws of 1911, p. 149,) p. 19; amendment to Commission Form of Government act, (Laws of 1910, p. 12,) p. 20. Counties: County funds, p. 51 and p. 87. Townships: Road and bridge funds, p. 123; money in hands of collector, p. 118; money in hands of supervisor, p. 160. Sanitary district: p. 52 and p. 53. School townships: School funds, p. 154. School district: p. 151. By the act of 1933 the same provision was made as to school funds in the hands of the county superintendent of schools. (Laws of 1933, p. 1109.) Each of the three amendments of the Cities and Villages act eliminated a prior provision for a depositary surety bond.

Out of all these statutes and amendments on the subject since 1872, twenty-three were enacted in 1932 and 1933. The extensive program of 1932 and 1933 was intended to remedy the conditions arising from the worldwide depression. Banks were failing daily and deposits in other banks were imperiled. Because of the hazards involved, custodians of public funds were finding it increasingly difficult to furnish bond. Some immediate measure of protection and relief was necessary. The moratorium as to custodians of public funds and other reme-

dial legislation was passed. (*Town of Cheney's Grove* v. *VanScoyoc*, 357 Ill. 52.) No legislation was necessary to establish or preserve the State's sovereign right to a preference in the distribution of the assets to the general creditors of a closed bank. That right existed at common law. (*People* v. *Oregon State Savings Bank*, 357 Ill. 545; *People* v. *Marion Trust and Savings Bank*, 347 id. 445.) But that preferential right does not extend to any of its political subdivisions. (*People* v. *Waukegan State Bank*, 351 Ill. 158; *People* v. *Ohle*, 345 id. 405.) When this program was inaugurated the only statutes pertaining to pledges of assets to secure deposits were the two relating to deposits by the State Treasurer and by receivers of closed banks. With all the facts before it the legislature enacted but two other statutes with a similar provision. One of them is the amendment authorizing other custodians of State funds to demand bond and securities from a depositary. The other is the Chicago Park District act. The logical conclusion is, that if the legislature had intended to extend those provisions to other deposits it would have so provided. Fourteen of the acts in that program provide only for copies of bank statements and that the deposits shall not exceed seventy-five per cent of the capital and surplus. The rule that the expression of one thing or one mode of action in an enactment excludes any other, even though there be no negative words prohibiting it, has been the settled law of this State since 1852. *Sammis* v. *Clark*, 13 Ill. 544; *Vestal Co.* v. *Robertson*, 277 id. 425.

It is claimed that if the act relating to deposits of State moneys is to be regarded as an implied grant confined to that limited field, the act is invalid because not submitted to a referendum under the constitutional provision. That contention would also apply to the Chicago Park District act. Whether the authority of the legislature to grant the power was defectively exercised and whether the particular acts are valid are not at issue and are im-

material in this case. When the act concerning suits against custodians of public funds in closed banks was passed, in 1932, the legislature undoubtedly took into consideration the two statutes providing for the pledge of securities for deposits by the State Treasurer and receivers of closed banks. If either of those custodians collected money from the sale or disposition of such securities he should be as liable to action thereafter as he or any other custodian of public funds who received a dividend from the officers or receiver of the bank, and the exception was plainly included for that purpose. But there is no reason for saying that it was thereby intended to generally confer the power to pledge assets. Nor does the authority granted receivers to redeem or take down collateral hypothecated "to secure notes or other evidences of indebtedness" indicate such a general grant. While deposits are debts of the bank, the language used in the statute is to be taken in its ordinary sense and is not to be subjected to a strained construction. If the legislature had meant to include deposits it would have said so. The act relating to deposits by the State Treasurer, and the subsequent legislation, do not show an intent to confer the power generally.

It is argued that the public policy of this State and the general weight of authority favor the validity of pledges to secure deposits. The term "public policy" has been variously defined. The courts, including this court, have generally approved Lord Brougham's definition as being that principle of law which declares that no one may lawfully do that which has a tendency to be injurious to the public welfare. The public policy of a State is to be found embodied in its constitution and its statutes. When these are silent upon the subject, then in the decisions of its courts. (*Knass* v. *Madison and Kedzie Bank,* 354 Ill. 554; *Illinois Bankers' Life Ass'n* v. *Collins,* 341 id. 548; *Ziegler* v. *Illinois Trust and Savings Bank,* 245 id. 180.) The constitution of 1848 provided that no act of the General Assembly

authorizing corporations or associations with banking powers shall go into effect or be in force unless approved by a referendum. This provision, amplified to include amendatory acts, was continued in the constitution of 1870. The framers of those instruments evidently realized that the business of banking is peculiarly fraught with a public interest. The provision employed evinces an intent to provide the means for effectually conserving that interest. The constitutional liability imposed upon stockholders over and above their respective holdings to the amount thereof for all liabilities of the bank accruing while they remain such stockholders indicates a like policy. Banks are quasi-public institutions. Their well being concerns not only the stockholders but the depositors and the public at large. (*Knass* v. *Madison and Kedzie Bank, supra.*) Bearing these facts in mind, we return to a short consideration of the legislation upon the subject.

The history of banking legislation, including the 1932 and 1933 program, demonstrates that the particular acts reviewed do not show an intent to generally confer the power in controversy. If it exists, it must be found, by necessary implication, in the grant of power to do a general banking business. The long established rule is that a corporation is a creature of the law, having no powers but those which the law has conferred upon it. It has no natural rights or capacities such as an individual or a partnership. A bank incorporated under legislative authority, like other corporations so organized, has only such powers as are expressly granted and as are necessarily implied from the specific grant. Every power not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of a grant operates against the corporation and in favor of the public. If a power claimed is withheld, the withholding is to be regarded as a prohibition against its exercise. (*Knass* v. *Madison and Kedzie Bank, supra; Calumet*

*Dock Co.* v. *Conkling,* 273 Ill. 318; *California Bank* v. *Kennedy,* 167 U. S. 362; *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 id. 24; 25 R. C. L. sec. 304, p. 1088.) In the *Knass case* we said: "The language 'doing a general banking business' may not by construction be extended beyond the meaning of like words used in the constitution of the State authorizing the creation of corporations 'with banking powers.' The words 'banking powers,' as used in the constitution, were in *Reed* v. *People,* 125 Ill. 592, construed to mean such powers as are ordinarily conferred upon and used by the various banks doing business in the country. The words 'general banking powers' are to be used in their common and ordinary sense. The ordinary and usual powers exercised by banks in doing general banking business are to loan money, to discount notes, receive deposits and deal in commercial exchange. They possess other powers, some of which are specifically conferred by statute, but these are the usual powers exercised in doing a general banking business." To the same effect are *Wedesweiler* v. *Brundage,* 297 Ill. 228; *People* v. *Doty,* 80 N. Y. 225; *Mercantile Nat. Bank* v. *City of New York,* 121 U. S. 138; *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1. The record contains no allegation or evidence that the pledge of assets to secure deposits is usual or customary within the scope of general banking business, nor can it be said that such a custom is so well known or established as to warrant taking judicial notice of it. It is not a power necessary to deposit banking. (*Texas and Pacific Railroad Co.* v. *Pottorff,* 291 U. S. 245, 78 L. ed. 777.) There is nothing in the language granting the power to do a general banking business indicating that the legislature meant to include any powers other than those usually understood as embraced within the term. We therefore cannot say that the public policy of this State, as declared by the constitution and legislative enactments, approves a general pledge of assets

by a bank to secure deposits. In this conclusion we are sustained by *Marion* v. *Snecden,* 291 U. S. 262, 78 L. ed. 787. In that case the Supreme Court of the United States was called upon to decide whether Illinois has conferred upon banks, organized under its laws, the power to pledge assets as security for deposits of public moneys of political subdivisions. It was held that no such power exists under the laws of Illinois and a pledge so made is void.

Whether or not the general exercise of the power in controversy is against public policy remains to be considered. The authorities are not in harmony. Much of the confusion has resulted from treating deposits as loans. Some of the courts have cited *Ward* v. *Johnson, supra,* apparently failing to consider the specific power of the bank in that case to make special regulations in reference to trust funds, deposits and savings. In Florida, Iowa, Indiana, Kansas, North Carolina, Pennsylvania and Utah the power to pledge was conferred by statute and upheld thereunder. The pledging of assets to secure deposits has been approved in *McFerson* v. *National Surety Co.* (1923) 75 Col. 482, 212 Pac. 489; *Ainsworth* v. *Kruger,* (1927) 89 Mont. 468, 260 Pac. 1055; *Portland* v. *State Bank,* (1923) 107 Ore. 267, 214 Pac. 813.) In *United States Fidelity Co.* v. *Bassfield,* 148 Miss. 109, 114 So. 26, the power was upheld under a statute providing that all public moneys are trust funds. In *Melavan* v. *Hunker,* 35 N. Mex. 408, 299 Pac. 1075, under a statute requiring banks to execute depositary bonds for county deposits, it was held that public policy favors a pledge of securities. Under a similar statute a pledge was approved in *Grigsby* v. *People's Bank,* 158 Tenn. 182, 11 S. W. (2d) 673. Arizona and Texas formerly approved such pledges, but in *Button* v. *Sanguinnetti,* 40 Ariz. 329, 11 Pac. (2d) 1085, and in *Foster* v. *City of Longview,* 26 S. W. (2d) 1059, and *Austin* v. *Lamar County,* 26 id. 1062, those States adopted the rule denying the power.

While a number of early decisions sanctioned the power to pledge assets, the tendency of the recent cases is to adopt the view that, in the absence of a statutory grant, banks have no such power. (*Marion* v. *Sneeden, supra; Divide County* v. *Baird,* 55 N. D. 45, 212 N. W. 236; *Bliss* v. *Pathfinder Irrigation District,* 122 Neb. 203, 240 N. W. 291; *Texas and Pacific Railroad Co.* v. *Pottorff, supra; Austin* v. *Lamar County, supra; Foster* v. *City of Longview, supra; Button* v. *Sanguinnetti, supra; Farmers and Merchants State Bank* v. *Consolidated School District,* 174 Minn. 286, 219 N. W. 163; *Farmers State Bank* v. *Marshall County,* 175 id. 363, 221 N. W. 242; *Arkansas County Road Improvement District* v. *Taylor,* 185 Ark. 293, 47 S. W. (2d) 27; *McConn* v. *Edwards,* 185 id. 620, 48 S. W. (2d) 558; *Wood* v. *Imperial Irrigation District,* 216 Cal. 748, 17 Pac. (2d) 128; *Carter* v. *Brock,* 162 La. 12, 110 So. 71; *State Bank of Commerce* v. *Stone,* 261 N. Y. 175, 184 N. E. 750; *Louisville* v. *Fidelity Trust Co.* 245 Ky. 704, 54 S. W. (2d) 40.) A leading case upon the subject often cited is *Commercial Bank and Trust Co.* v. *Citizens Trust Co.* 153 Ky. 566, 156 S. W. 160. In that case it is held that, there being no express authority granted, it should be clearly established that such power is essential to the proper conduct of its business and necessary to enable it properly to enjoy, use and carry out its express powers, and that the enumeration of powers excludes other methods of banking; that the practice of securing deposits by pledge of assets would have a tendency to and pave the way for the perpetration of fraud by putting it in the power of officers of a bank to give a preference to favored customers, and would undoubtedly have a tendency to destroy the faith of the depositing public in banking institutions. It is pointed out that the aim and trend of all modern legislation on the subject have been to protect all the depositors by the law imposing double liability upon stockholders, making provision for the publi-

cation of sworn statements as to the bank's condition at regular intervals, and providing for rigid examination and inspection.

There is a very marked and material difference between a loan and a deposit. It is a criminal offense for an insolvent bank to receive deposits. On the other hand, from the overwhelming weight of authority a bank has the power to borrow money to meet an emergency or exigency, such as threatened or temporary insolvency. (*Divide County* v. *Baird, supra.*) In *Farmers and Merchants State Bank* v. *Consolidated School District, supra,* the Supreme Court of Minnesota said: "The primary duty of the banker is to protect and maintain that right [the depositor's] unimpaired. The plainest public policy demands that it shall be so maintained. Therefore, anything which unavoidably and in the usual course of things tends to its impairment is contrary to public policy. The pledge of assets to secure bank deposits falls automatically within that condemnation. At the outset, it evinces a willingness to favor the secured depositor at the expense of those less favored. Then it actually sets apart for his exclusive benefit part of a fund to no part of which he should have any such right, and in every part of which the other depositors should have the same right as himself. It is in derogation of that fair and equal treatment of all depositors, which is fundamental in the ethics of banking. A conclusive test is that no bank can make a practice of securing deposits by pledging assets and live. A few such transactions made known to its clientele would put any bank out of business. The practice would properly be taken to show that the institution was intrinsically so little deserving of deposits that resort to the too attractive lure of collateral was compelled by adverse circumstances. No bank could long survive such an expose. The very offer of collateral for his deposit would send any discreet and informed depositor elsewhere. So, if the practice of securing deposits by

pledge of assets is resorted to at all, it must be done secretly. That is enough to condemn it. Any power the exercise of which will not stand the light of publicity can not be allowed to banks. The argument that a bank has, as an implied power, one that if used openly is ruinous and must be resorted to clandestinely if at all, refutes itself. Banks are intended above all else to be the dependable agents of thrift and commerce. To that end, express powers have been conferred on them. It would violate all rules of construction to construe into their implied powers one that would go so far to defeat the purposes of the express powers. * * * Bank deposits and bank borrowings are alike in but the one respect that one result of each is the relation of debtor and creditor. In every other respect the two operations are not only different but in complete antithesis. Deposits are attracted by the strength of a bank, whereas its borrowings are compelled by weakness or other adverse circumstance. * * * How it comes then that the obvious truth that a bank may pledge collateral for borrowed money can be used to sustain the same power in the case of deposits we cannot understand. The former is clearly necessary, usual, and incidental, whereas the latter is neither necessary, usual, nor incidental, but is positively dangerous."

The principles announced in *Commercial Bank and Trust Co.* v. *Citizens Trust Co. supra, Divide County* v. *Baird, supra,* and *Farmers and Merchants State Bank* v. *Consolidated School District, supra,* are followed, and each of those cases is cited with approval, in *State Bank of Commerce of Brockport* v. *Stone,* 261 N. Y. 175, 184 N. E. 750. The other cases above cited denying the power in controversy are based upon the same principles. Two of the most recent cases are *Texas and Pacific Railroad Co.* v. *Pottorff, supra,* and *Marion* v. *Sneeden, supra.* The controlling feature to be observed is the paramount interest of the public in the welfare of those institutions and

the preservation of the equality of the rights of those dealing with them. A pledge withdraws capital assets. (*Texas and Pacific Railroad Co.* v. *Pottorff, supra.*) Without a stable system of banking, commerce and trade must cease. The wheels of industry would be stopped, affecting not only stockholders in banks and persons dealing with the institutions but the public in general. A most important factor to be considered is that if banks are permitted to pledge their assets to secure deposits and the occasion arises for the need of the loan, they will be overwhelmed by certain and swift disaster because of a lack of collateral to secure the loan. To permit such pledges would be inconsistent with many provisions of the Banking act which are designed to insure, in case of disaster, uniformity in the treatment of depositors and a ratable distribution of the assets. In consonance with the holdings of a majority of the courts of last resort in this country, we are of the opinion that the general practice of pledging assets by banks to secure deposits is not only unnecessary, but is dangerous to the general welfare and is against public policy.

One question remains to be considered. Appellant contends that even though this court should hold the contract and pledge to be *ultra vires* and void, it should not be required to surrender the assets except on condition that the receiver first pay to it the amount of its deposit at the time the bank ceased to do business. There is some authority in support of that proposition. (*State Bank of Commerce of Brockport* v. *Stone, supra,* which is followed by an intermediate court in *State* v. *Dean,* 47 Ohio App. 558, 192 N. E. 278.) But the weight of authority is against the contention. (*Divide County* v. *Baird, supra; Marion* v. *Sneeden, supra; Texas and Pacific Railroad Co.* v. *Pottorff, supra; Farmers and Merchants State Bank* v. *Consolidated School District, supra.*) There is a wide distinction be-

tween the effect of the exercise of a power not conferred upon a corporation and the abuse of a power granted or a failure to observe prescribed formalities or regulations. (*Durkee* v. *People,* 155 Ill. 354.) In this State it is well settled that when a contract of a corporation is *ultra vires*—that is to say, outside the object of its creation as defined by the law of its organization and therefore beyond the powers conferred by the legislature—it is not only voidable but wholly void and of no legal effect. It cannot be ratified, because it could not have been legally made. No performance by the parties can give it validity or become the foundation of any right of action upon it. Neither party is estopped by assenting to it or by acting upon it to show that it was prohibited. The power in controversy having been withheld its exercise was thereby prohibited. The powers delegated by the State to corporations are matters of public law, of which no one can plead ignorance. Parties dealing with them are chargeable with notice of those powers and their limitations. A contract void because prohibited by law cannot in any manner be enforced. The law does not prohibit and also enforce a contract. (*Knass* v. *Madison and Kedzie Bank, supra.*) Restitution would simply continue the wrong against innocent parties. Being bound to take notice of its illegality, appellant had no right to rely on a preference by the unlawful pledging of assets.

The trial court and the Appellate Court correctly held that the pledge was void. The judgment of the Appellate Court is therefore affirmed.    *Judgment affirmed.*

Mr. JUSTICE WILSON took no part in this decision.