312

(No. 4900- )

FRED M. MERSINGER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 13, 1962.*

*Petition of claimant for rehearing denied March 29, 1963.*

WAGNER, CONNER, FERGUSON, BERTRAND AND BAKER, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; ROBERT A. SPRECHER, Special Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Fred M. Mersinger, a Certified Public Accountant, seeks recovery for accounting fees and expenses allegedly earned as a result of services performed by claimant and his organization for the State Auditor of Public Accounts during the biennium 1955-1957.

Claimant's original petition sought $34,812.50. Claimant thereafter amended his claim to $37,304.02 at the commencement of the hearing. The claim was reduced by claimant to $29,909.07 during the hearing.

A claim for payment for work performed on eighteen State audits is at issue in this proceeding. Orville Hodge, as Auditor of Public Accounts, authorized such audits. During this period, Edward Epping was Hodge's administrative assistant, and at the same time a 50% partner in claimant's firm. Dr. Lloyd Morey succeeded to the office of Auditor on July 18, 1956, and thereupon

dismissed Epping. Epping allegedly terminated his partnership relationship to claimant on July 20, 1956.

On or before July 20, 1956, claimant's firm had completed nine of the audits in question, bearing invoice numbers 239 to 247. Audits numbered 249 to 258, inclusive, were in progress on July 20, 1956. These were completed subsequent to that date pursuant to specific authorization by Dr. Morey. All other audit authorizations on which work had not yet begun were cancelled by Dr. Morey.

Respondent opposes Mersinger's claim on the grounds that the contracts, which had been awarded to his firm for auditing, were rendered null and void because of violation of Ill. Rev. Stats., Chap. 127, Sec. 75 (1951, 1953 and 1955), which provided:

"No contract shall be let to any person holding any State office in this State or a seat in the General Assembly, or to any person employed in any of the offices of the State government, or the wife of a State officer, member of the General Assembly, or employee as aforesaid, nor shall any State officer, member of the General Assembly, or wife of employee as aforesaid, become, directly or indirectly, interested in any such contract, under penalty of forfeiting such contract and being fined not exceeding one thousand dollars. 1915, June 22, Laws 1915, p. 671, Sec. 12." (Emphasis•Supplied.)

and, Ill. Rev. Stats., Chap. 102, Sec. 3, which provides:

"No person holding any office, either by election or appointment under the laws or constitution of this State, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. No such officer may represent, either as agent or otherwise, any person, association, trust or corporation, with respect to any application or bid for any contract or work in regard to which such officer may be called upon to vote. Nor may any such officer take or receive, or offer to take or receive, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character. Any contract made and procured in violation hereof is void." As amended 1949, May 6, Laws 1949, p. 1162, Sec. 1. (Emphasis Supplied.)

Mersinger testified that he had two partners, Edward Epping and Harold Storck; that his partnership

with Epping became effective on April 1, 1952; that the partnership agreement was reduced to writing as of November 1, 1952, and provided that Epping would be a 50% partner of Mersinger. He further testified that the partnership with Epping was dissolved on July 20, 1956.

The record further shows that, shortly after Hodge assumed the office of Auditor of Public Accounts on January 12, 1953, Epping also began to serve as Hodge's "administrative assistant, or executive assistant, or the right-hand-man of the Auditor" (*People* vs. *Epping*, 17 Ill. (2d) 557, 162 N.E. 366 at p. 370). Epping was dismissed from the Auditor's office by Dr. Lloyd Morey, who succeeded to the position of Auditor on July 18, 1956. Although Mr. Epping was not technically on the payroll of the State, the evidence shows that he performed executive functions for the State, such as approving vouchers of the Auditor's office. For a short period after Epping went to work for the State, he billed the State of Illinois on a time basis. Hodge and Epping then arranged for the State to pay $1,000.00 per month plus Epping's expenses to the Mersinger firm, which in turn paid Epping.

Edward Epping was called as a witness in the instant proceeding, but refused to testify by invoking his constitutional rights against self-incrimination.

The Illinois Supreme Court affirmed the conviction of Epping for the crime of embezzlement by a public officer or his servant in *People* vs. *Epping*, cited above. The action was based on Sec. 80 of the Illinois Criminal Code, Ill. Rev. Stats., 1951, 1953, 1955, Chap 38, Sec. 214, which provides as follows:

"*If any state, county, township, city, town, village or other officer elected or appointed under the constitution or laws of this state, or any clerk, agent, servant or employee of such officer, embezzles or fraudulently converts to his own use, or fraudulently takes or secretes with intent to do so, any money, bonds, mortgages, coupons, bank bills, notes, warrants,*

orders, funds or securities, books of record, or of accounts, or other property belonging to, or in the possession of the state or such county, township, city, town or village, or in possession of such officer by virtue of his office, he shall be imprisoned in the penitentiary not less than one nor more than fifteen years." (Emphasis Supplied.)

Epping acted as a State official in recommending assignments of audits to "independent" agencies, such as F. M. Mersinger & Co., which received 90% of such assignments. He then worked on such audits as a partner in the Mersinger firm, and then he approved and reviewed his own audits in the guise of a State official. The evidence showed that completed audits were delivered to and accepted by him.

Claimant Mersinger billed the State of Illinois for a total of $532,563.30 for the period of February 13, 1953 to December 15, 1956, of which the State of Illinois has paid a total of $497,730.80. In *People ex rel Smith* vs. *Mersinger,* 18 Ill. (2d) 486 (1960), the Supreme Court refused to allow the State to recover this amount. That action was based on a 1955 conflict of interest statute, which first provided for a forfeiture of certain contracts, and subsequently was amended to provide for a fine only. The Court held that the contract was fully executed on both sides, and could not be declared forfeit insofar as recovery of monies already paid were concerned. It did not consider the legality of the contract itself.

If Orville Hodge, who held office by election under the Constitution of the State of Illinois, took or received, either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his action in his official character, then any contract made and procured in such manner would be void (Chap. 102, Sec. 3, as quoted above).

The authorization for all services supplied by Mersinger, and represented by the eighteen invoices at issue in the instant case, was originally given by Hodge. Dur-

ing this same time, Epping was a partner in the Mersinger firm and Hodge's assistant. Claimant introduced copies of sixteen letters of authorization, signed by Hodge as Auditor, ordering the audits upon which the claim herein is based, and testified that the two other letters of authorization had also been executed by Hodge.

Mersinger testified that on March 14, 1953 he loaned $10,000.00 to the Hodge Insurance Agency, and on the same date received a note for $10,000.00, executed by the Hodge Agency and by Orville Hodge, personally. Mersinger further testified that on or about the same date Epping also loaned Hodge or the Hodge Agency $10,000.00. The principal amount of $20,000.00 loaned by Mersinger and Epping to the Hodge Agency has never been repaid. The Hodge Agency was owned solely by Orville Hodge.

Hodge became State Auditor on January 12, 1953, and the Mersinger Company received its first State of Illinois warrant issued during Hodge's term on February 13, 1953. In the following three and one-half years the Mersinger firm was paid the sum of $497,730.80 by the State of Illinois for work ordered by Orville Hodge.

Harold Storck testified that he was a Certified Public Accountant, and a resident partner in the Springfield office of F. M. Mersinger & Co. from August 1, 1955 to April 15, 1957. He testified that the Springfield office had a system by which the partners, associates and employees kept a record of their time and expenses. Testimony revealed that, during 1954, 1955 and 1956, John Casper received salary and traveling allowances from the Mersinger Springfield office in the total sum of $7,201.50; Thelma Casper received $7,201.50; and James Erickson received $15,775.00. These sums were allotted in monthly installments. Evidence further showed that John Casper was a driver for Orville Hodge, and a custodian of

Hodge's lake home; Thelma Casper was Orville Hodge's housekeeper, and James Erickson was a chauffeur for Mrs. Orville Hodge. No services were rendered to the Mersinger firm by any of these persons.

Of nineteen checks made payable to James Erickson, each in the amount of $75.00, one or two were signed by Epping, and the rest were signed by Harold Storck. At least thirteen of these checks had been cashed by Hodge, and deposited in his so-called "brown envelope" account at the Southmoor Bank and Trust Company in Chicago.

The evidence further shows that, when Dr. Morey assumed the office of Auditor of Public Accounts, he authorized claimant Mersinger's firm to complete audits numbered 249 through 258, which had already been begun, although he cancelled all other engagements for which no work had as yet been started. Morey also accepted the audit reports in question as satisfactorily meeting the engagements.

The transcript of the record quotes Dr. Morey's testimony as follows:

"I found on taking office that some work had been done on all of these engagements [249 to 258]. *Therefore, I authorized Mr. Mersinger's firm to continue and complete those audits and submit reports.* . .On these nine audits the reports of the audits were not—they were in due time received by my office. They were examined and accepted as satisfactorily meeting the engagements and the reports disposed of in the usual manner. (Emphasis Supplied.)

"We received itemized statements of time and expenses which were examined. With respect to the hourly rate of pay it was my conclusion that —referring to my specific notes here—with respect to the scale of per diem charges, these were within customary and reasonable rates in our opinion.

"Q. You don't then, sir, specifically have a copy of the letter where you directed the Mersinger Company to proceed to complete the nine audits?

A. I do not find such a letter.

Q. You distinctly remember, however, having written such a letter?

A. I cannot say that a letter was written. I have reason to believe that it was, but it hasn't been furnished me by the office, which I judge means they have not been able to locate it.

318

Q. Dr. Morey, at the time you directed Mr. Mersinger's firm to complete these nine audits that were in progress on July 15, 1956, did you feel or were you advised that you had sufficient statutory authority to direct these audits be concluded? . . .Were you advised, sir, that you had specific statutory authority, or did you know of specific statutory authority to have audits made of State agencies?

A. I did believe at that time I had full statutory authority to make such audits—to have such audits made.

Q. At the time you directed the Mersinger firm to complete these nine audits did you, sir, have personal knowledge from the records maintained in your office that there were sufficient sums on hand in the appropriations made for these types of services to pay the Mersinger firm the amount of money that would be required if they completed the services?

A. Yes. Otherwise I would not have confirmed those commitments."

Where a statute expressly declares that certain types of contracts are void, there is then no doubt of the legislative intent, and any agreement of the nature thus voided by statute is unlawful. The same is true where the contract is in violation of a statute, although not therein expressly declared to be void (13 C. J., Contracts, Sec. 351, p. 420). Therefore, violation of Ill. Rev. Stats., Chap. 127, Sec. 75, or Chap. 102, Sec. 3, heretofore set forth, would render Mersinger's auditing contracts void and unenforceable. That both statutes have been violated must be readily concluded from the evidence presented. The Supreme Court recognized that Epping was a State employee at the same time that he was a partner in claimant Mersinger's firm.

The record is also clear that Hodge accepted at least $50,178.00 directly or indirectly for his own benefit from Mersinger, Epping, and Mersinger & Company. A reasonable inference may be drawn from the foregoing, when coupled with the fact that Mersinger received at least 90% of the auditing contracts awarded by Hodge, that Hodge took "money or other thing of value as a gift or bribe or means of influencing his . . . action in his official character", as prohibited by Ill. Rev. Stats., Chap. 102, Sec. 3.

It has been held that a contract may be illegal and void, yet not be an absolute nullity. This principle is stated in 13 C. J., Contracts, Sec. 339, p. 410, as follows:

"The expression 'void' as used in this connection has the meaning of not affording legal remedy rather than of absolute nullity, since such contracts when executed may be indirectly effective in that no relief will be granted to either party."

Hence, a contract may be non-forfeitable yet unenforceable, and a decision holding the contracts authorized by Orville Hodge unenforceable in the Court of Claims would not conflict with the decision of the Supreme Court in *People ex rel Smith* vs. *Mersinger*, cited above, which did not allow forfeiture of executed portions of the contract.

It is the opinion of this Court that recovery for work done on audits numbered 239 to 247 should be denied on the grounds that the contracts involved are illegal, and illegal contracts are unenforceable. Those audits were authorized by Hodge and Epping, and were completed before Hodge had left office and Epping had resigned from the Mersinger firm, all in violation of the statutes upon which respondent relies.

The question next arises as to the effect of Dr. Morey's direction that claimant proceed to completion with audits numbered 249 to 258. Under Illinois law, as defined by a series of cases, it appears that an illegal contract may not be ratified. In the case of *State Bank of Blue Island* vs. *Benzing*, 383 Ill. 40 at p. 54, the Supreme Court stated:

"A contract void because it is prohibited by law can in no manner be enforced. The law does not prohibit and also enforce a contract. (*Knass* vs. *Mad. and Kedzie Bank*, 354 Ill. 554; *People* vs. *Wiersema Bank*, 361 Ill. 75.) Where a contract is *ultra vires*, it is not only voidable but wholly void and of no legal effect and cannot be ratified, nor can performance by the parties give it validity or become the foundation of any right upon it,

nor is either party, by assenting to it or by acting upon it, estopped to show it was prohibited. *(People* vs. *Wiersema Bank,* 361 Ill. 75; *Steele* vs. *Fraternal Tribunes,* 215 Ill. 190.)"

This Court holds, therefore, that no part of the contracts, which were rendered void because of violation of Ill. Rev. Stats., Chap. 127, Sec. 75; and Chap. 102, Sec. 3, may be enforced. However, when Dr. Morey specifically authorized Mersinger to complete audits 249 through 258, and Mersinger did so in reliance thereon, the State received a positive benefit untainted by illegality, and should pay for such services rendered subsequent to July 20, 1956.

A review of the detailed computations in this proceeding will reveal that work in the sum of $9,916.63 was performed by claimant prior to July 20, 1956, and work performed after that date amounted to $19,992.44. A sum of $2,491.52, attributable to previously unbilled time and expense, was included in the figure of $19,992.44. Since this amount had never been billed to the State, it is not recoverable in this action. The amount involved is, therefore, reduced to $17,500.92.

The evidence herein further reveals that a number of payments in advance were received by claimant from the State of Illinois. In particular, we note warrant No. 589 027. A total of $5,000.00 of this warrant was allocable to invoices Nos. 250 and 254, both of which were among those completed subsequent to July 20, 1956. We hold such sum of $5,000.00 to be an equitable offset against the obligation of respondent, and we accordingly award to claimant the sum of $12,500.92.