(No. 23458.—

THE CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Appellee, vs. THE PEOPLES TRUST AND SAVINGS BANK OF CHICAGO et al.— (CHARLES O. DAVIS, Appellant.)

*Opinion filed April 16, 1937—Rehearing denied June 16, 1937.*

Cooke, Sullivan & Ricks, John L. McInerney, and Fred M. Outhouse, (George A. Cooke, Edward H. Fiedler, and John D. Cooke, Jr., of counsel,) for appellant.

Mayer, Meyer, Austrian & Platt, and Thomas G. Deering, (Carl Meyer, Herbert A. Friedlich, Frank D. Mayer, and Louis A. Kohn, of counsel,) for appellee.

Castle, Williams & McCarthy for Edward J. Barrett, Auditor, as *amicus curiæ*.

L. E. Birzdell for Federal Deposit Insurance Corporation, as *amicus curiæ*.

Mr. Justice Jones delivered the opinion of the court:

This appeal from the circuit court of Cook county concerns the validity of an agreement between the Continental Illinois Bank and Trust Company, of Chicago, and the Peoples Trust and Savings Bank, of the same place, entered into on June 9, 1932. The transaction involved

an alleged loan by the Continental Bank to the Peoples Bank. Subsequent to the execution of the agreement, the Continental Bank was converted from a state bank into a national bank. The issue is raised through a suit by the converted national bank against the Peoples Bank, and its stockholders, to enforce the constitutional liability of the stockholders of the latter bank to its creditors. The suit is brought by the Continental Bank as a creditor in behalf of itself and all other creditors of the Peoples Bank. Approximately two hundred stockholders, including appellant, Charles O. Davis, the owner of one share of stock, were made defendants. The whole amount sought to be recovered is $2,500,000, the full amount of the issued stock of the Peoples Bank. Numerous defendants, including appellant, owning in the aggregate approximately 1500 shares and represented by the same counsel, filed motions to dismiss the amended complaint. All of such motions, and appellant's amended motion, were overruled. In order to determine the issues raised by the pleadings without the expense necessarily involved by a trial, appellant elected to stand by his motion. Judgment was thereupon entered against him for the full amount of his stock liability and he appeals.

From the allegations of the amended complaint, which, by the motion, must be taken as true, it appears that the Peoples Bank was organized in 1910 under the Illinois banking laws. It conducted a general banking business. Incident to the general depression, it suffered, in common with other Chicago banks, heavy withdrawals during the month of May and the early days of June, 1932, whereby its liquid assets became so reduced as to be insufficient to meet the anticipated immediate demands of depositors. At a meeting on June 9, the board of directors determined, by resolution, to liquidate the affairs of the bank, and after the close of business that day no further deposits were accepted and no further loans were made. A resolution was

also duly adopted which authorized and directed the execution of the agreement and it was executed on the same day. The agreement was ratified and approved at the annual meeting of the stockholders of the Peoples Bank on January 11, 1933, by an affirmative vote of 19,366 shares out of the total of 25,000 shares outstanding.

The pertinent provisions of the agreement are: The Continental Bank agreed to loan the Peoples Bank a sufficient sum to pay certain liabilities of the Peoples Bank, as shown by its books at the close of business on that day, totaling $16,421,642.48. The money loaned was to be retained by the Continental Bank and used to pay such liabilities, which it thereby assumed and agreed to pay when and as due and payable, and it was not required to keep the money separate from its own funds. It was provided that the assumption of such liabilities should constitute full payment to the Peoples Bank of the sum agreed to be loaned and it should have no further right, title, interest, claim or demand in or to the proceeds of the loan, except the right to have such proceeds applied to the payment of the assumed liabilities. The loan was to bear interest from date of the contract at five per cent regardless of the dates when the liabilities should be paid by the Continental Bank. The Peoples Bank agreed to repay, on June 1, 1934, or on demand any time after January 1, 1933, any unpaid balance of the loan, plus interest on such unpaid balance, and any other indebtedness of the Peoples Bank to the Continental Bank, to the extent that the Continental Bank had not been repaid out of the liquidation of the assets of the Peoples Bank.

As collateral security for the payment to the Continental Bank of the indebtedness, the Peoples Bank sold, assigned, conveyed, transferred, set over, and delivered to the Continental Bank all of its assets and property of every kind (except leases to the Peoples Bank) to be held and disposed of by the Continental Bank under the agreement.

The Peoples Bank agreed to take all necessary action for the substitution of the Continental Bank as successor trustee, or other fiduciary, to any trusts being administered by the Peoples Bank, which the Continental Bank might specify. The Continental Bank might, at its option, pay any other liability of the Peoples Bank, and when so paid the amount was to be treated as an assumed liability and part of the indebtedness under the agreement.

All cash on hand and due from banks, and the market value on that day of all United States government obligations tranferred, were to be at once applied as' a payment on account of the indebtedness. Like applications were to be made from time to time from the net cash realized from the other items of collateral. The Continental Bank had full power, in its discretion, to select at any time, whether due or not, any other bonds included in the collateral, and might list any loans, real estate bonds and mortgages, as it would purchase in the ordinary course of business, and credit the face amount thereof, plus interest, on the indebtedness. All such items selected and applied as payments were thereafter to become the sole property of the Continental Bank. The Continental Bank agreed to endeavor to liquidate such collateral from time to time regardless of whether or not the indebtedness to it was due. The proceeds of the liquidation were to be applied, first, to reimburse the Continental Bank for all indebtedness under the agreement and all other liabilities of the Peoples Bank to it. After such payment, any surplus collateral, or the proceeds of any surplus collateral, were to be turned over to the Peoples Bank.

The Continental Bank was given the absolute, exclusive and untrammeled right and power at any time, and from time to time, without notice to the Peoples Bank or anyone else, to sell or dispose of any of the collateral. All rights of redemption therein, and any claim against the Continental Bank by reason of its dealings of any kind with

reference thereto, were waived by the Peoples Bank. It was provided that notwithstanding anything to the contrary therein, the Continental Bank should have all the right, title, power, authority and discretion in connection with such collateral, and every item thereof, as it would have if it were the absolute owner thereof. The Continental Bank had the right to purchase the collateral, or any part thereof, at any broker's board or at public sale.

All expenses incurred by the Continental Bank in carrying out the contract, including taxes and insurance and a commission of not to exceed two per cent on collections made after May 31, 1933, were to be included in the amount of the indebtedness. The Peoples Bank agreed to deliver to the Continental Bank, upon demand, all of its books, files and records for such use in connection with the agreement as the Continental Bank should see fit to make, and execute all further instruments so as to vest in the Continental Bank the full and complete, absolute, legal and equitable title to all of such collateral. It was provided, however, that the agreement should be sufficient to transfer such title to the Continental Bank, subject to the terms thereof. The Peoples Bank agreed, upon demand, to cause to be held all such meetings of its directors and stockholders as the Continental Bank should require "for the purpose of consummating liquidation or dissolution of said Peoples Bank;" that it would not, without the consent of the Continental Bank, voluntarily dissolve or go into liquidation, and that from and after the date of the agreement it would not receive any deposits or voluntarily incur any liabilities without the consent of the Continental Bank.

It was further provided that the obligation of the Peoples Bank to repay such indebtedness constituted an existing debt, and that the liability of its stockholders for such debt under the constitution and the Banks and Banking act should be and remain in full force and effect until full payment of the indebtedness, and that nothing in the agree-

ment should affect or impair the rights of the Continental Bank against the Peoples Bank and its stockholders, for any theretofore existing liabilities of the Peoples Bank to it.

The Continental Bank fully complied with the provisions of the agreement to be performed by it and paid all the liabilities of the Peoples Bank listed in the agreement, except $58,720.76, owing certain depositors who made no demand for their money. At the time of filing the complaint it had funds available to discharge such liabilities. On June 7, 1934, there was unpaid on the amount of the original loan the sum of $4,898,701.15, together with accrued interest in the sum of $677,340.49, aggregating $5,576,041.64.

Appellant claims that the Continental Bank is not a creditor within the meaning of the constitution (section 6 of article 11) and has no right to maintain this suit. Our jurisdiction is invoked on this ground, among others. We are of the opinion that the case involves a construction of the constitution. The context of the agreement shows clearly that all and every asset of the Peoples Bank was conveyed and transferred to the Continental Bank, except certain leases which are not described. The Peoples Bank had nothing left with which to do business. In fact, it agreed that it would not thereafter accept or receive any deposits or voluntarily incur any liabilities without the consent of the Continental Bank. It was no longer a going concern. Its corporate functions could include nothing but liquidation and this the Continental Bank agreed to do for it. Liquidation was the essence of the contract. It was the foundation upon which the agreement stood. The appellant challenges the right of each bank to attempt the liquidation of the Peoples Bank in the manner it did. He contends that the agreement was and is void because, as to both banks, it is *ultra vires*.

Many citations of authority have been furnished us by counsel, but most of them are not helpful, because they pertain to bank liquidations not made pursuant to statutory

authority or made prior to the amendments of 1929 to the Banks and Banking act. Up to that time the statute provided for only one method of voluntary liquidation of a bank which had determined to quit business. That method was to be found in the provisions of section 15 of the act. A bank could determine its affairs, distribute its assets among its stockholders, resign its charter or certificate of incorporation, and close up its business by depositing with the Auditor of Public Accounts an amount of money equal to the whole amount of debts and demands against it, including expenses of the liquidating proceeding. That method was ordinarily impractical and impossible because few banks could make such a deposit of money. During the years following 1929, commonly known as the years of depression, numerous banks were in a distressed financial condition. For a time stronger banks were inclined to go to the aid of weaker banks by absorbing them, or by mergers and consolidations. The general purpose was to encourage confidence of the people in banks. Some of these improvised plans of liquidation were attacked as being illegal. Suits were instituted and some of the cases got as far as the Appellate Court. (*Sherrard State Bank* v. *Vernon,* 243 Ill. App. 122; *Candor* v. *Mercer County State Bank,* 257 id. 192; *People* v. *Sherrard State Bank,* 258 id. 168.) In none of the above cases were all of the assets of a bank transferred to the other, and we make reference to those cases simply because they are indicative of the banking situation in many places at that time. The necessity for speedy action to save banks was apparent. The legal questions involved were perplexing to the profession. The effects of consolidations so hurriedly made were proving disastrous. Examples of this kind were numerous. Thus the Sherrard State Bank assumed some of the obligations of the Sherrard State Banking Company, as a result of which it ruined itself and failed. (*People* v. *Sherrard State Bank, supra.*) The Auditor of Public Ac-

counts saw the necessity for legislation to give the State more supervision and greater powers, both as to going concerns and failing banks. The General Assembly provided amendments to the Banks and Banking act. These amendments were approved by a vote of the people and became law. Amended section 15 expressly provided that one bank could contract in writing with another bank to assume the whole amount of debts and demands against it, but the contract must be first approved by the Auditor of Public Accounts. Such contracts had never before been sanctioned by statute. The provision has several salutary objectives in behalf of banks, stockholders and creditors. The Auditor of Public Accounts is the head of the State banking system. He has the facilities for determining the financial strength or weakness of banks. He has the means of ascertaining, with reasonable accuracy, whether a contract is fair or unconscionable, whether it is calculated to imperil the assuming bank or jeopardize the interests of those in the failing bank. He can protect the interests of the creditors and stockholders and compel strict performance of the agreement by the liquidating bank. These factors are essential elements of the amended act.

The very purpose of the amendments to section 15 was to give statutory sanction to assumption contracts provided they met with the approval of the Auditor of Public Accounts. The agreement between the Continental Bank and the Peoples Bank was in writing, but it was entered into without the approval of the Auditor of Public Accounts. The question now is whether it is valid.

One dealing with a bank is chargeable with notice of its powers and limitations. We have often held that the banking business is so impressed with a public interest that it is subject to strict regulatory legislation. Private banking is forbidden by law. National and state banks are creatures of the law having no powers but those which the law has conferred upon them. The powers vested in a

bank are only such as are expressly granted and as are necessarily implied from the specific grant. Every power not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of a grant operates against the corporation and in favor of the public. If a power claimed is withheld, the withholding is to be regarded as a prohibition against its exercise. (*People* v. *Wiersema State Bank,* 361 Ill. 75; *Knass* v. *Madison and Kedzie Bank,* 354 id. 554.) The power of one bank to liquidate the business and affairs of another bank according to its own will and determination and without the approval of the Auditor of Public Accounts has been withheld.

To illustrate the necessity of impartial supervision of contracts of this kind, let us examine the status of the stockholders of the Peoples Bank immediately upon the execution of the agreement. All of the assets of that bank were gone. The listed liabilities were more than $16,000,000. Added to that, the Continental Bank had become an alleged creditor of the Peoples Bank for a like amount, with a result that the stockholders had a constitutional liability of $32,000,000 instead of $16,000,000. Of course, this liability was reduced as fast as the Continental Bank gave credit, on the alleged loan, for any amount realized out of the assets of the Peoples Bank. It is apparent that if the Auditor of Public Accounts had supervised the terms of the agreement, he would not have permitted that situation to arise. Again it is more than doubtful if he would have permitted the Continental Bank to have entered into the agreement at all, because its terms were decidedly unfavorable to that bank, which now finds itself with a loss of nearly $6,000,000. Even if the stockholders of the Peoples Bank were compelled to pay one hundred per cent on their constitutional liability, the Continental Bank would still be $3,500,000 behind. Only a

very large bank could stand such a loss without having its assets seriously impaired.

It is also provided, by amended section 15, that if, at the expiration of one year from the beginning of liquidation, there are any outstanding demands which have not been presented, the liquidating bank may deposit with the Auditor of Public Accounts, or elsewhere, under his direction and subject to his order, on interest, a sum sufficient to meet such outstanding demands, which when presented to the Auditor of Public Accounts shall be paid by him. The complaint in this case shows that there is approximately $58,000 due creditors who have made no demand for payment. Nevertheless, this sum has never been turned over to the Auditor of Public Accounts pursuant to the statute, but is still retained by the Continental Bank. The contract was designed to evade the plain and unambiguous provisions of the statute.

It is said that section 15 applies only to cases where one bank assumes the whole amount of the debts and demands against the other and therefore the rules, above mentioned, have no application to this transaction, because the Continental Bank did not assume the whole amount of debts of, and demands against, the Peoples Bank, but merely certain specified classes of debts and demands. It is true the contract provides that the Continental Bank agrees to loan to the People Bank a "sufficient sum to pay all of the following liabilities and only the following liabilities of the Peoples Bank," as shown by the books of the Peoples Bank at the close of business on June 9, 1932. The classes of liabilities are enumerated and seem to include every kind of liability which a bank might have. Following this enumeration, there is a warranty by the Peoples Bank that their books of account truly, accurately and completely set forth such liabilities and do not exceed the respective amounts, all of which total $16,421,642.48. A further warranty contained in the agreement is: "Said Peoples Bank hereby ex-

pressly warrants that its resources and liabilities are correctly shown by its books of account as of the close of business on the 9th day of June, 1932." No one can read this agreement without reaching the conclusion that it was the intention of both banks to include all of the liabilities of the Peoples Bank, but the Continental Bank protected itself against undisclosed liabilities not shown by the books of account. The contract stripped the Peoples Bank of every vestige of property it had and of every power bestowed upon it as a banking corporation. It was left with no means of ever paying the debt or any interest on it. It had no way of making a dollar. Although it did not surrender its charter and was not technically dissolved, that fact is immaterial. It could not have done so without first satisfying all its obligations. It was completely and forever out of business and the argument that the whole of its liabilities was not, in fact, assumed, can avail nothing in this case. The action of the banks, in attempting to shift responsibility for the debts of one of them, was beyond the powers conferred upon either by the legislature. A contract of that character cannot be ratified because it could not have been legally made. The power to do the things contemplated by the agreement having been withheld by law, its exercise was thereby prohibited. The powers delegated by the State to corporations are matters of public law of which no one can plead ignorance. *People* v. *Wiersema State Bank, supra.*

We hold that the banks were without power to make the agreement; that it is void, and that the Continental Bank is not a creditor within the meaning of section 6 of article 11 of the constitution. The circuit court erred in entering a decree against appellant and that decree is reversed and the cause remanded, with directions to allow the motion of. the appellant to dismiss the complaint as to him.

*Reversed and remanded, with directions.*