**Thrift, Incorporated, Appellee, v. State Bank and Trust Company et al., Appellants.**

**Gen. No. 40,311.**

Opinion filed February 1, 1939.

McNab, Holmes & Long, of Chicago, for appellants; F. Reed Dickerson and Albert S. Long, of Chicago, of counsel.

Max Murdock, of Chicago, for appellee.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the defendants from a judgment entered by the court for $2,010.60 in an action brought by the plaintiff based upon the breach of a certain contract in writing under which the defendants are claimed to have obligated themselves to purchase, for the school year 1934–1935, certain supplies and services to be furnished by the plaintiff in pursuance of a plan for school savings in the city of Evanston. The case was tried before the court without a jury, and the court found the issues for the plaintiff and entered judgment for the amount appealed from by the defendants.

The original contract was signed by the State Bank & Trust Company, City National Bank of Evanston, Evanston Trust & Savings Bank and the Central State Savings Bank of Evanston. The First National Bank and Trust Company of Evanston has succeeded to the business of the City National Bank of Evanston and to its position as participant in the transactions sued

upon, and it has functioned under the alleged contract with the plaintiff substantially as if it were the City National Bank of Evanston. The Central State Savings Bank of Evanston is no longer in existence.

The alleged contract, which was first executed on June 14, 1922, is in the form of a printed letter, prepared by and addressed to the plaintiff by the defendants, in which the latter request the preparation and delivery of supplies and the installation of the plaintiff's school banking plan in the public schools of Evanston. Such installation was to cover a minimum period of 3 years, thereafter to continue indefinitely until canceled by the defendants during the month of May. The plan was for the purpose of introducing a savings system by representatives of the plaintiff, an explanation of its operation to school principals and teachers, talks to students by rooms, lectures in high schools and junior high schools, the sending of letters of explanation through students to parents, the conducting of student contests, supervision of the opening and handling of student accounts on the first banking day, etc. In return the defendants promise to pay $1,072.80 per 5,364 students per year, that is, 20 cents per pupil per year, ''so long as the system remains in operation,'' the annual payments becoming due on successive anniversaries of the date of installation.

Paragraphs 7 and 8 of the contract letter provide as follows:

''7. This contract may be cancelled by us by giving notice to that effect to Thrift, Incorporated, during the month of May preceding the 3rd or any subsequent anniversary of the date of installation, such cancellation to take effect only when this system shall have been in operation for 3 years from date of installation. . . .

''8. This order is unconditional except as noted hereon, is not subject to cancellation and shall be bind-

ing upon Thrift, Incorporated, when accepted in writing by them.''

Savings deposits were accepted on a schoolroom basis by teachers on behalf of the banks. The children were given pass books and urged to make weekly deposits. The entry in the pass book in each case was made by the teacher. At the same time a carbonized duplicate deposit slip was made and later turned over to the principal, together with the money received. At the end of the day both money and deposit slips were collected by messengers from the respective banks. Under the arrangement, the banks had little to do with determining either the general form or the details of the system, although their suggestions were sometimes followed, sometimes not. The final decision on proposed changes appears to have been the plaintiff's only. Plaintiff took care of the various printed forms and posters, as well as the Thrift Almanac, a magazine issued peridiocally. These were all handled and paid for by the plaintiff. The printing orders for the pass books, which were stamped with the names of the respective banks and numbered consecutively, were customarily placed with various printers early in June and requisitions were made against these orders to meet the needs of each bank.

Pursuant to the printed request of the defendants, the plaintiff prepared and delivered supplies and installed the school banking plan in the public schools of Evanston on September 15, 1922, and the parties continued under this general arrangement until April 14, 1933, when the defendants wrote to the plaintiff that '' . . . it was decided to discontinue your service in connection with the school savings plan in the Evanston schools.'' Upon further consideration, the defendants wrote again on June 12, 1933, '' . . . we now wish to reinstate the contract on condition that the rate per pupil is to be reduced for the coming year from twenty

cents per pupil to fourteen cents per pupil. If this is acceptable, please acknowledge same and oblige.'' Upon receipt of this letter the plaintiff replied under date of June 13, 1933, ''We acknowledge with appreciation your letter of June 12, reinstating your School savings contract on terms which are acceptable to us.''

This savings plan was continued for the ensuing year, but finding the system still too costly, the banks wrote on June 12, 1934, '' . . . it was decided that the Evanston Banks would discontinue school savings at the close of the present school year.'' Further overtures by the plaintiff were cut short when on July 14, 1934, the defendants wrote, '' . . . the Evanston Banks met yesterday and ratified their former action of discontinuing your system of school savings. The action was unanimous and the matter is closed and we are not willing to discuss it further.''

It further appears from the evidence introduced by the parties that the plaintiff was engaged in the business of operating throughout the middle west and the south and the east a well established system by which it was serving about 500 banks with supplies and service of the same character as it rendered to the defendant banks in Evanston under this contract; that the plaintiff provided a staff of travelling representatives who visited all of the communities periodically, conferred with teachers, held faculty meetings, made talks to the children in the school rooms, launched and conducted campaigns and contests to inspire and maintain interest and co-operation of school children and teachers in the plan.

The plaintiff suggests that the defendants' appeal must be dismissed, not having been perfected within 90 days after the judgment appealed from. It appears from the record that judgment was entered on January 17, 1938. The notice of appeal was filed and served on May 4, 1938, more than 90 days after entry of the

judgment. Plaintiff suggests that under section 76 of the Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, § 200, [Jones Ill. Stats. Ann. 104.076]), appellate jurisdiction had expired unless something can be done to toll the statute.

The reply of the defendants is that on January 26, 1938, the defendants filed what is designated as a motion for a new trial, which was considered by the court after argument, and on February 9, 1938 the motion for a new trial was denied.

It does appear from the record that the plaintiff, by attorney, made the statement in court that it would not stand on a technical objection. However, the proper practice to have been taken by the plaintiff in this matter was a motion to dismiss the appeal. The Supreme Court in passing upon a like matter in the case of *Cincinnati, I. & W. Ry. Co. v. People ex rel. Moffett,* 205 Ill. 538, said:

''As to the second proposition, the record shows that appellant deposited the sum of $510.18 with the county collector, in compliance with the statute, for the purposes of the appeal. But if that were not so, the objection comes too late. No motion was made to dismiss the appeal, but appellee joined in error and briefs were filed by both parties, and the case was submitted for decision on the errors assigned. The question whether the appeal was regularly taken does not arise on such submission, and it could only be presented by a motion to dismiss the appeal. *Wabash Railroad Co. v. People,* 196 Ill. 606.'' In *Wabash R. Co. v. People ex rel. Funk,* 196 Ill. 606, the court made this statement:

''It is objected by the appellee that the appeal in this case was improperly allowed. No motion was made to dismiss the appeal, briefs were filed by both parties and the case submitted to the court for decision upon the errors assigned. The objection comes too late.''

So that the plaintiff having failed to make a motion to dismiss the appeal and having submitted the cause for this court's decision upon the merits, we shall consider the case upon the suggestions for relief other than the question of dismissal, which we have concluded is not properly before this court.

The defendants in their brief contend that the plaintiff cannot recover in this suit because the alleged contract was both *ultra vires* and in violation of the banking laws of this State, and call our attention to paragraph 9, sec. 9, ch. 16½, entitled, "Banks" (Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 10.09]) which provides:

" . . . No bank shall establish or maintain more than one banking house, or receive deposits, or pay checks at any other place than such banking house, and no bank shall establish or maintain in this or any other state or country any branch bank, nor shall it establish or maintain in this state any branch office or additional office or agency for the purpose of conducting any of its business."

It does appear that under the provisions of plaintiff's contract the plan was for the purpose of introducing a savings system by representatives of the plaintiff, an explanation of its operation to school principals and teachers, talks to students by rooms, lectures in high schools and junior high schools, the sending of letters of explanation through students to parents, the conducting of students contests, supervision of the opening and handling of student accounts on the first banking day, etc., and in pursuance of the plan it appears from the record that deposits by the children were collected in the schoolroom and handled on a schoolroom basis; that is, the deposits were brought to the teacher by the children and entered in a pass book which had been issued to them by the teacher, and

then the money and a duplicate deposit slip were turned over to the principal of the school, the pass book returned to the child and the money collected by messengers from the banks at the end of the day.

The real question is whether the banks were doing business according to the plan of the plaintiff in violation of the provision of the statute which we have set forth in this opinion. It does appear from the facts, as well as from this contract, that a place for the deposit of money was fixed in the schools, pass books issued, and the teacher received deposits, entered them in the pass books in accordance with the provisions of the contract, and delivered the money to messengers of the banks.

It seems clear that the banks were maintaining an agency for the conduct of their business, not alone an agency to do business, but an agency to receive deposits of money made by the children which had been credited in the pass books in the schoolrooms, and that this contract of the plaintiff, which seeks to establish the plan outlined in the agreement, is in violation of that part of the statute which provides: "No bank shall . . . receive deposits . . . at any other place than such banking house, and no bank shall establish or maintain . . . any . . . additional . . . agency for the purpose of conducting any of its business."

A pertinent statement is made by our Supreme Court in the case of *Continental Ill. Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank,* 366 Ill. 366, where the court considered the same question, in a measure, as is involved in this particular lawsuit. The court said:

"One dealing with a bank is chargeable with notice of its powers and limitations. We have often held that the banking business is so impressed with a public interest that it is subject to strict regulatory legislation. Private banking is forbidden by law. National and

state banks are creatures of the law having no powers but those which the law has conferred upon them. The powers vested in a bank are only such as are expressly granted and as are necessarily implied from the specific grant. Every power not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of a grant operates against the corporation and in favor of the public. If a power claimed is withheld, the withholding is to be regarded as a prohibition against its exercise. (*Peter v. Wiersema State Bank,* 361 Ill. 75; *Knass v. Madison & Kedzie Bank,* 354 id. 554.)''

In dealing with these banks the plaintiff of course was chargeable with notice of such powers as they had, and from an examination of the particular section of the banking law which we have quoted, it seems clear that these banks were without power to transact and conduct the business provided for in the plan between the plaintiff and the defendant banks. For the reasons we have stated, we believe the contract is in violation of the provision of the statute providing for the transaction of the business by the banks, and therefore is not an enforceable one.

There is also the question of enforceability of the contract in question upon the ground that the contract sued upon was unilateral, and not enforceable as an executory contract of purchase and sale. It is true that the contract in this case was signed by the parties, but this fact of itself does not make the contract one of mutuality.

After passing upon the enforceability of the contract we have reached the conclusion, as stated in the opinion, that the contract between the defendant banks and the plaintiff is not a legal contract that can be enforced, and for that reason it will not be necessary to take up

510

the other questions regarding the particular contract questioned.

For the reasons stated, the judgment is reversed.

*Judgment reversed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.