Troy L. Long, Receiver of First National Bank of Sheridan, Appellant, v. Farmers and Merchants State Bank of Sheridan et al., Appellees.

Gen. No. 9,384.

Opinion filed May 1, 1939.

GEORGE V. B. WEEKS and JOHN H. ARMSTRONG, both of Ottawa, for appellant.

C. B. CHAPMAN, ROBERT CARR, R. A. GREEN, BUTTERS & BERRY, HAROLD R. LANGER and HIBBS & POOL, all of Ottawa, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

The First National Bank of Sheridan, Illinois, assumed the deposit liabilities of the Farmers and Merchants State Bank of Sheridan, by contract entered into on June 22, 1931. Pursuant to the contract, the State Bank delivered to the National Bank its assets, both real and personal, by proper conveyances and assignments, and at such time ceased to do business.

The National Bank suspended business on March 4, 1933, under the moratorium then declared, and never reopened for business. The present receiver of the National Bank filed this complaint early in 1936, seek-

ing to enforce constitutional liability against the stockholders of the State Bank to recover for the deficit claimed to exist after liquidating the assets of the State Bank and paying its deposit liabilities. Answers thereto were filed, denying that the liquidation contract between the two banks was approved by the auditor of public accounts as provided by section 15 of the Banking Act [Ill. Rev. Stat. 1937, ch. 16½, § 15; Jones Ill. Stats. Ann. 10.16]; also alleging that the National Bank did not perform its contract, in that it did not pay all deposit liabilities of the State Bank and did not liquidate certain bonds that were turned over to it, which bonds depreciated in value until they have become almost worthless. Upon hearing, the court dismissed the complaint for want of equity and appellant prosecutes this appeal.

Appellees urge that the contract in question was a liquidating contract as contemplated by section 15 of the Banking Act; that it was made without the approval of the auditor of public accounts, as required by said act, and therefore void. Appellant insists that the contract between the banks was not a liquidating contract such as contemplated by said section 15 of the Banking Act, but that the National Bank is merely a creditor of the State Bank for money advanced by it to pay the liabilities of the State Bank, and that therefore the State Bank is the debtor of the National Bank for any deficiency existing between the assets so transferred and conveyed and the liabilities assumed. From the oral argument had in this case and the briefs filed, it is rather apparent that the action of the trial court in dismissing the suit was in view of the provisions of the above section of the Banking Act, and the holdings thereunder such as in the *Continental Ill. Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank,* 366 Ill. 366.

It is claimed by appellant in its bill that it assumed a total liability on behalf of the State Bank of $76,405.57; that its receipts from the assets were $42,530.75; that a deficit exists of $33,874.82; that the sum of $14,016.58 is due on account of charges made for interest and expenses incident to such liquidation; and that this makes a total due to appellant from the State Bank of $47,891.40. This is the sum claimed by appellant to be due it as a creditor of the State Bank, and upon which it predicates the stockholders' liability. It appears that there is approximately $1,300 of deposits assumed by the National Bank from the State Bank, which were never paid. It further appears that bonds of the par value of $33,832.12 were delivered to the National Bank by the State Bank pursuant to the contract between them, and that certain of such bonds then had a market value of $18,000; that the National Bank did not liquidate these bonds and they have depreciated in market value until they are now worth approximately $3,000. It is claimed by appellees that appellant did not carry out and fulfill its contract, and that a substantial performance on its part was necessary to the maintenance of this suit.

The complaint is predicated on the theory that the National Bank is creditor of the State Bank for money advanced by the former to pay the liabilities of the latter. The complaint alleges the transferring to the National Bank of all the assets of the State Bank, upon condition that the National Bank assume and agree to pay the deposit liabilities of the State Bank. It is then alleged that the National Bank did not purchase any of the assets of the State Bank, but that the transfer was solely for the purpose of securing the National Bank against loss on account of the liabilities assumed, and that the relationship of debtor and creditor existed between the two banks. Appellant asks that the amount due it from the State Bank be

fixed; that the stockholders of the State Bank and the extent of their liability be fixed; and that a receiver be appointed to receive and collect the money from such stockholders upon their constitutional liability, for the benefit of appellant. As above stated, appellant claims that the transaction had between the two banks in the transfer and conveyance of the property and assets of the State Bank to it, was for the purpose of giving security to appellant bank for the repayment of money advanced by it to discharge the liabilities of the State Bank. However, the agreement between the two banks upon which the bill is predicated, discloses beyond question that every asset of the State Bank was conveyed and transferred to the National Bank. The "banking house and site," of the State Bank were conveyed to appellant. It was provided by the contract that the State Bank should retire from business immediately upon the execution of the agreement and should transact no further business except such as necessary to carry out the agreement between it and appellant, and to bring about a surrender of its charter. The State Bank never resumed business, and by virtue of its contract with appellant, was left devoid of anything with which a banking corporation could do business. Its records and books of accounts were turned over to the National Bank, together with all its property and assets. It was no longer a going concern, and any corporate functions that might be possible for it to do following this agreement could include nothing but steps taken toward a liquidation. This is not only the effect and result of the contract, but it is a part of the express terms thereof. The National Bank agreed to bring about the liquidation by the unconditional assumption of all the liabilities of the State Bank to its depositors. Therefore, we are unable to escape the conviction that liquidation of the State Bank was the thing sought and intended to be brought about by the contract, and

was in fact the motivating cause for the execution thereof. It was the purpose of the agreement. Except for the liquidation of the State Bank by appellant, there was no reason or cause for the contract to be made.

Section 15 of the Banking Act as amended in 1929, permits the liquidation of a bank by a contract in writing, to be first approved by the auditor of public accounts, whereby one bank may assume the debts and demands against the other bank. The purpose of the amendment of 1929 to this section of the act, was to create a statutory sanction to assumption contracts such as we find in this case. The auditor of public accounts has the facilities for determining the financial condition of banks, and thus has the means of determining the advisability of contracts of this character. In this manner he may determine from experience and the information available, whether the calculated assumption of liabilities is advisable on the part of the assuming bank, or whether such action would jeopardize the interests of the depositors and creditors of the assuming bank. In such case it is better to permit the depositors and creditors of the failing bank to sustain their loss, than by an unwise merger or assumption to bring about a corresponding loss and injury to depositors and creditors of both a failing bank and the assuming bank. Thus it has been provided that such contracts, before they shall become legally effective, must be approved by the auditor of public accounts, and it has been so held in the recent case of *Continental Ill. Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank, supra.* Subsequent conduct of the parties acting under such an agreement cannot serve to render it effective under the statute, unless it has first been approved by the State auditor.

As stated, the contract in this case stripped the State Bank of every vestige of property it had and of every power bestowed upon it as a banking corpora-

tion. It was left with no means of ever paying the debt or any interest, as it had no way of making a dollar. The import of the opinion in the *Continental Ill. Nat. Bank* case, *supra,* was that since the contract in that case was ultra vires, the Continental Bank therefore was not a creditor of the Peoples Trust within the meaning of sec. 6 of art. 11 of the Constitution. It would appear that the contract in this case does not vary fundamentally from the contract in that case. It is very similar. Its purpose and object was the same. The manner to be employed for carrying out the terms thereof is practically the same. The situation of the contracting parties is the same. The conditions causing the parties to so act were the same. In other words, it is an attempt by a solvent bank to take over a failing bank for the purposes of liquidation.

The proceedings of the State Bank with reference to the contract, refer to the transaction as a merger of the two banks, in some instances, and as a sale of the State Bank to the National Bank, in other instances. The contemplated transaction is referred to as a sale, in correspondence between the State Bank and the bank examiners. As stated in *American Nat. Bank of Mt. Carmel v. Holsen,* 331 Ill. 622, 632, if the transfer and conveyance of the assets and property of the State Bank was an outright sale to the National Bank, in consideration of the assumption of its liabilities, then there was no debt left upon which liability of stockholders could exist. But appellant does not accept this version of the matter and insists that it is a creditor of the State Bank, and seeks to maintain its rights as such.

Appellant urges that the contract between it and the State Bank received the approval of the auditor of public accounts as provided by section 15 of the Banking Act. Appellees urged that no record appears showing the approval of this contract by the auditor;

that his approval is an official act of his office and must be made to appear in an express manner, which will remain as a permanent record and memorial of such official act.

Representatives of the National Bank examiner's office of Chicago, appear to have been important factors in the transaction. Representatives of the State auditor's office also knew of the proposed action contemplated by the two banks. Appellant urges that since the State auditor's representatives had knowledge of the negotiations, that the auditor was thereby charged with such knowledge and that his silence amounted to an acquiescence and approval of the plan of liquidating the State Bank, as evidenced by the contract.

The word approval has different meanings depending upon the manner in which it is used, and the subject matter to which it is to be applied. The approval of the State auditor in his official capacity is required to such contracts. The terms of the statute necessarily import the exercise of discretion and judgment on the part of the auditor in these matters. Under such circumstances, the word approval means more than a mere ministerial act. It involves the exercise of judgment and discretion on the part of such officer, and he in his official capacity must make known his approval with absolute certainty by some affirmative act that is visible, definite and permanent, by his written, signed declaration, so that the same may become and remain an official record of his office. No such form of approval appears in this case.

The fact he had knowledge of the proposed plan or agreement, cannot of itself constitute approval. It is the plain intent of the statute that his power to approve such contracts implies a power to disapprove or to withhold approval. Therefore, he must have knowledge of such an agreement before he could do any of the above.

We cannot agree with appellant's contention in the above respect. Statutory requirements regarding the approval of an executive officer of the State, when such act involves the exercise of judgment and discretion, means more than the unexpressed mental acquiescence of such officer as an individual. It means that such officer in his official capacity has considered the proposed act and determined that it was proper, and he must make such fact known by a final, direct, affirmative action, signifying his approval by his signed declaration, in his official capacity. Official acts such as here required, cannot depend for decision upon the memory and testimony as to what the unexpressed thought of a public officer was at a former time. The auditor, who was in office at the time in question, cannot now act, and the present auditor cannot act because the entire matter transpired prior to his term of office. The act of approval as contemplated by the statute in this case, imports some outward and favorable indication of the exercise of the auditor's judgment and discretion, so that his determination in such regard may become a permanent record, and not remain a matter of conjecture.

The public interest is involved in such matters, as well as the funds of the creditors of the respective banks. The statute definitely requires the approval of the auditor of public accounts before such an agreement can become valid and effective, and a formal compliance with such requirement is necessary. If each such venture could cause a relaxing of the statute, depending upon its particular needs, in order to render same effective, the plain intent of the act would be destroyed.

Appellant having assumed the liabilities of the State Bank by the contract, it must necessarily be considered there are no other creditors, and the complaint does not aver any. Under the holding in the *Continental*

*Bank* case, *supra,* we are of the opinion that appellant is not such a creditor as will permit the bringing of this suit. The decree of the trial court is therefore affirmed.

*Decree affirmed.*