Walter Behrens, Appellant, v. The First National Bank of Chicago et al., Appellees.

Gen. No. 40,980.

Opinion filed May 20, 1940.   Rehearing denied June 5, 1940.

Arthur F. McCormick, of Chicago, for appellant; Ode L. Rankin, of Chicago, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, for certain appellee; WALTER H. JACOBS, of Chicago, of counsel.

CAMPBELL, CLARK & MILLER, of Chicago, for certain other appellees; CHARLES V. CLARK, FREDERICK D. CARROLL and FRANK B. GILMER, all of Chicago, of counsel.

SLOTTOW & LEVITON, of Chicago, for certain other appellee; JOSEPH G. SLOTTOW and HAROLD P. SHANE, both of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Behrens, on March 7, 1938, filed his bill of complaint against the First National Bank, the National Security Bank, Arnold E. Christiansen et al., and also against Mary Dammann, as executrix of the estate of Gustav Dammann. Motions of defendants to strike were twice sustained and amendments filed. To the complaint as amended defendants again filed a motion to strike, which on March 31, 1939, was sustained and the complaint dismissed. Mary Dammann, as executrix, made a motion to dismiss supported by an affidavit (to which no counter-affidavit was filed) in which she set up that the action as to her was barred in that it was not begun within one year from the date of the issuance of letters of administration to her. It is not argued that the court erred in dismissing the complaint as against her. The question for decision is whether the court erred in dismissing the complaint as amended against other defendants.

In the complaint plaintiff describes himself as a stockholder in one of two banks doing business in Chicago: namely, the Security Bank of Chicago and the Second Security Bank of Chicago, both of which were carrying on a general banking business on March 13, 1933. At that time, the Second Security Bank had outstanding capital stock of 3,500 shares, $100 per share par

value, each and all of which were owned and held by the Security Bank of Chicago. The Security Bank of Chicago had outstanding 7,000 shares of capital stock of like par value, and of this stock plaintiff (the bill avers) was and is the owner of 3 shares. The Security Bank had about 3,500 depositors owning deposits of about $2,000,000. The Second Security Bank had 2,500 depositors, having deposits of about $1,000,000. Both banks had other assets. The place of business of the Security Bank was 767 Milwaukee avenue in Chicago, and the Second Security Bank's place of business was 1965 N. Milwaukee avenue.

March 13, 1933, the officers of these banks, upon authority given by their boards of directors, entered into a contract with defendant, First National Bank. The Security Bank by its contract acknowledged an indebtedness to the First National of $1,141,704.08, which it promised and agreed to pay with interest. The Second Security Bank by its contract admitted an indebtedness to the First National of $825,000 which it also promised to pay. By each contract the respective banks conveyed to the First National all its property of every kind and nature as collateral from the proceeds of which it was agreed that this indebtedness to the First National Bank should be paid. In each case the First National also agreed to advance sufficient money to pay off the depositors in full, and any surplus which might remain was to be turned over to the respective banks.

The original complaint by way of conclusion made many averments as to the contents of these contracts which also conveyed certain real estate of each of the banks to Charles V. Clark, in trust for the benefit of the First National Bank. No copies of the contracts were attached to the bill of complaint. The complaint said plaintiff did not have the contracts, but that defendants knew all about them. There was no allegation that any request had been made to see the contracts nor

fact alleged showing diligence to obtain them. The bill said plaintiff did not know of the facts alleged until informed by a letter from Norman B. Collins, dated February 17, 1938.

The bill avers by way of conclusion that these contracts are invalid, illegal and void; that the same are fraudulent as to the stockholders, in behalf of all of whom plaintiff files his complaint. The bill prays that the contracts be decreed to be void; that there should be an accounting, a reassignment and reconveyance of the property conveyed, etc., and also for alternative relief.

May 16, solicitors for the First National Bank tendered to plaintiff in open court copies of the contracts, and plaintiff was given 30 days to amend his complaint. June 15, he filed an amendment attaching to the complaint these copies of the contracts, but stating he had not had an opportunity to compare the same with the originals, and that he did not know whether the copies were true. The contracts are identical in form and substance. The only difference between them is that the name Security Bank of Chicago is in one, and Second Security Bank of Chicago in the other. Each of the contracts consists of 17 paragraphs; recites the debt of the bank to the First National, the sale, assignment and conveyance to the First National Bank of all the assets of the other bank (excluding leasehold estates and not including assets held in a fiduciary capacity), as collateral to be used in payment of the indebtedness to the First National; that the other bank shall not thereafter, without consent in writing of the First National Bank, dissolve or go into liquidation and that it will not thereafter accept or receive deposits nor voluntarily incur any liabilities.

The preamble recites that the Security Bank has deposit liabilities for which it will be necessary to borrow additional money, and that it has requested the First National Bank to loan the additional money to the ex-

tent necessary to pay its deposit liabilities in full, and that these assets shall also stand as collateral security for this additional money.

We take judicial notice of the fact that at the time these contracts were entered into, by proclamation of the President of the United States and of the Governor of Illinois, every bank in this State was closed. It is the gist of the contention of plaintiff that since banks are .quasi-public institutions which are subject to the provisions of the statute, these contracts were invalid and illegal in that they provided for the liquidation and dissolution of the banks in a manner not provided for by the statute (Ill. Rev. Stat. 1939, ch. 16½, § 15 [Jones Ill. Stats. Ann. 10.16] as amended). The plaintiff relies upon two cases, which, he argues, are controlling. *Continental Ill. Nat. Bank & Trust Co. of Chicago v. Peoples Trust & Savings Bank of Chicago,* 366 Ill. 366; *People ex rel. Nelson v. Wiersema State Bank,* 361 Ill. 75.

Section 15 of the Banking Act in substance provides two methods by which a banking corporation may be dissolved. The bank may deposit with the auditor of public accounts an amount of money equal to the whole amount of debts and demands against it, including expenses of the proceeding, and make distribution under the direction of the auditor of public accounts, or it may make a contract which must be approved by the auditor by which another bank or banking corporation of this State or the United States shall assume the whole amounts of such debts and demands against it. In such case a copy of the contract must be deposited with the auditor and upon so doing it may determine its affairs and distribute its assets, resign its charter and close up its business by resolution of its stockholders. The statute provides for publication to be made to those interested, etc. The contract challenged in the *Continental* case in substance provided for dissolution without complying with these provisions of the statute, and at the suit of the Continental Bank the contract was

held illegal ultra vires and unenforceable for that reason. Plaintiff says the contracts here challenged are in substance similar contracts which provided for the dissolution of these banks; that the same were not approved by the auditor or filed with him in conformity with the statute; and that for this reason they also should be held to be illegal and void.

The contracts here challenged, however, are not, as we read them, contracts for the liquidation and dissolution of the corporations, similar to the contract in the *Continental* case, and plaintiff cannot maintain this suit on this theory for several reasons. The contracts here questioned are essentially different from the contract there held void, in that while that contract was in essence one for liquidation and dissolution of the corporation these are in essence for the borrowing of money to pay to the depositors that which is due to them. Many banks whose affairs have been brought before us for consideration would have been most fortunate if they could have obtained similar help upon the same terms. The contract in the *Continental* case expressly assumed the obligations of the other bank. On the contrary, these contracts expressly provided: "The First National does not assume, and shall not be deemed by anything in this agreement contained, or otherwise, to have assumed, any liability or obligation of the Security Bank, of any kind, nature or description whatsoever." The contract in the *Continental* case resulted in closing the bank whose assets were sold and assigned. These two banks were already closed at the time of the execution of the contracts by proclamation of the President of the United States and the Governor of Illinois. We believe it has never been held by any court of this State that a contract of a bank by which it is enabled to borrow money through the pledge of collateral in order to pay its depositors is illegal and contrary to public policy. The contracts here expressly indicate that it was the intention of the parties that the convey-

ing banks should not be dissolved or liquidated. One paragraph of the contract is: ''The Security Bank will not, without the consent in writing of the First National, voluntarily dissolve or go into liquidation. The Security Bank will not, from and after the date hereof, accept or receive any deposits and will not voluntarily incur any liabilities whatsoever, except with the consent of the First National.'' It is quite true that this provision requires the cessation by the borrowing banks of a banking business, but the complaint, which must be construed most strongly against plaintiff, does not allege that the borrowing banks, or any one of them, was solvent, and if they were insolvent, it would not only be illegal but criminal for their officers with knowledge to receive deposits.

Not only is this suit distinguishable from the *Continental* case with respect to the nature of the contract entered into but also with respect to the plaintiff who brings the suit. In the *Continental* case the suit to set aside the contract was brought by the Continental Bank, itself, the loaning corporation. It was a party to the contract and it was a creditor of the other bank. This suit is by a mere stockholder who is without any right whatever to represent other stockholders and who has made no demands on either the bank in which he holds stock, its officers or directors, or other stockholders, to bring suit in behalf of himself and others. The *Continental* suit, unlike this, was to enforce the stockholders' statutory and constitutional liability. Moreover, the complaint does not offer to do equity. The complaint shows that the transfer of assets were made as collateral security for liabilities of nearly $2,000,000. Plaintiff does not offer to pay these, and the facts as stated by the complaint show he knew, or ought to have known, that the bank in which he held stock was closed, and that the slightest diligence on his part would have given full knowledge at the time of the execution of the contracts of their provisions. The

bill shows that he waited only a few days less than five years without inquiry and without protest. During all that time he held these three shares of stock, representing a negligible interest in the corporation. He watched and waited while others put their shoulders to the wheel. Now, after all this time, he seeks on a bare legal technicality to overturn everything that has been done. His laches prevents.

The rule of ultra vires is not intended as a license for commercial piracy. Plaintiff is without standing in a court of equity. The decree will be affirmed.

*Decree affirmed.*

O'CONNOR and McSURELY, JJ., concur.