William L. O'Connell, Receiver of West Englewood Trust and Savings Bank (Charles H. Albers, Receiver, Substituted in Lieu of William L. O'Connell, Deceased), Appellant, v. Chicago Park District and the First National Bank of Chicago, Appellees.

Gen. No. 40,966.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed May 22, 1940.

COOKE, SULLIVAN & RICKS, of Chicago, for appellant; HOMER D. DINES, JOHN D. COOKE, JR. and ROLLIN C. HUGGINS, all of Chicago, of counsel.

HAROLD V. AMBERG, HOMER J. LIVINGSTON and TAYLOR, MILLER, BUSCH & BOYDEN, all of Chicago, for certain appellee; FRANCIS X. BUSCH, HOMER J. LIVINGSTON, JOHN S. MILLER and LAURENS G. HASTINGS, all of Chicago, of counsel.

JOHN O. REES, of Chicago, for certain other appellee; PHILIP A. LOZOWICK, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

It is agreed by all the parties herein that the statement of the case by appellant, is both correct and sufficient. That statement is as follows:

This appeal involves consolidated actions at law and comes to this court on an agreed case and certification of a question of law from a judgment entered in the consolidated cause by the superior court of Cook county

sustaining motions of defendants to dismiss the suits in the consolidated cause and dismissing such suits on the ground that the causes of action are barred by the statute of limitations.

On June 4, 1936, William L. O'Connell, as receiver of West Englewood Trust and Savings Bank, Armitage State Bank, West Town Trust & Savings Bank, Bryn Mawr State Bank, West Highland State Bank, Chicago Lawn State Bank, Chatham State Bank, Brainerd State Bank, Auburn Park Trust & Savings Bank and Ridge State Bank, all Illinois banking corporations, filed in the superior court of Cook county a separate complaint with respect to each of said banks, making in each case Chicago Park District and the First National Bank of Chicago, parties defendant thereto and in each case summons issued and service was had on the defendants.

The first three counts of each of the complaints asked judgment against the defendants for damages for the conversion of certain securities which had been pledged by the bank in question to secure deposits of South Park Commissioners, and the fourth count of each of the complaints sought recovery from the defendant, Chicago Park District, in assumpsit for moneys belonging to the plaintiff (that is, the proceeds from the sale of said securities) had and received by South Park Commissioners.

Soon after the filing of those complaints, William L. O'Connell died and Charles H. Albers, in his capacity as receiver of each of such banks, was substituted as plaintiff in each of said suits in the place of William L. O'Connell.

On October 8, 1936, pursuant to demand therefor, a bill of particulars was filed in each of the causes above mentioned.

On May 28, 1938, an order was entered by the superior court consolidating the 10 causes.

The agreed case and certification of question of law

set forth the complaint and bill of particulars in only one of the constitutent causes, namely, the one involving the West Englewood Trust and Savings Bank, and it was therein stated, for the purpose of this appeal, that except as to amounts, descriptions of the securities involved, the names of the particular banks, and history of the same, each of the other nine complaints and bills of particulars set forth the same facts.

The only question of law arising in this appeal, as set forth in the agreed case and certification of question of law, is whether the causes of action as alleged in the complaints are barred by the statute of limitations of the State of Illinois.

So far as material for a determination of the question involved in this appeal, the facts as set forth in the complaint with respect to the West Englewood Trust & Savings Bank as further amplified by the bill of particulars, may be summarized as follows:

West Englewood Trust & Savings Bank, a corporation, organized under the banking laws of Illinois, carried on a banking business in Chicago from the date of its organization until June 9, 1931, on which latter date the auditor of public accounts of Illinois, finding that the capital stock of such bank had become impaired and that the impairment could not be made good, took control of the property and assets of such bank, and thereafter on July 10, 1931, appointed Irwin T. Gilruth as receiver thereof. Irwin T. Gilruth acted as receiver of said bank until March 3, 1934, when he resigned and William L. O'Connell was appointed and duly qualified as his successor.

The South Park Commissioners was from 1869 up to the time it was succeeded by Chicago Park District, a municipal corporation organized under the laws of Illinois. The defendant Chicago Park District was organized under an act of the General Assembly of Illinois in 1934 and upon its organization the corporate existence of South Park Commissioners ceased and Chi-

cago Park District succeeded South Park Commissioners and became vested with all its powers and duties and assumed all its liabilities and obtained title to all its lands, properties and funds.

The First National Bank of Chicago is a corporation organized under the laws of the United States and is successor to First Union Trust and Savings Bank by reason of the merger or consolidation of First Union Trust and Savings Bank with the First National Bank of Chicago.

On July 22, 1930, $125,000 of funds of South Park Commissioners were deposited with West Englewood Trust and Savings Bank, and to secure the repayment of such deposit, said bank turned over and delivered to Oscar G. Foreman, the treasurer of South Park Commissioners, and purported to pledge various bonds belonging to said bank, the description and amounts thereof being set forth in the complaint. On March 6, 1931, $62,500 of the funds so deposited were withdrawn and the balance of such funds remained on deposit until the closing of West Englewood Trust and Savings Bank on June 9, 1931.

On June 10, 1931, First Union Trust and Savings Bank sold said pledged bonds and received as the proceeds of the sale the sum of $63,069.49. After making the sale, First Union Trust and Savings Bank paid to the auditor of public accounts of Illinois $569.49 of the proceeds of such sale and turned over the balance, namely $62,500 to South Park Commissioners by depositing such sum in the First National Bank of Chicago for the credit of an account of South Park Commissioners on the books of the First National Bank of Chicago known as "South Park Commissioners Special Reserve Fund." Shortly thereafter this sum was withdrawn by South Park Commissioners, such withdrawal being effected by means of warrants or checks drawn on the First National Bank of Chicago and signed by the then secretary and countersigned by the

then auditor of South Park Commissioners.

The causes of action set forth in the first three counts of the complaint are for the conversion of said bonds by First Union Trust and Savings Bank and South Park Commissioners. The cause of action set forth in the fourth count of the complaint is one in assumpsit against the defendant Chicago Park District for money had and received.

Plaintiff's theory of the case is that with respect to the first three counts of the complaint the causes of action for conversion did not arise, and the statute of limitations did not start running, until the sale of the bonds on June 10, 1931, or at most, until the closing of the bank on June 9, 1931, and that with respect to the fourth count against the defendant Chicago Park District, in assumpsit for money had and received, the cause of action did not arise, and the statute of limitations did not start running, until the proceeds of sale were received by the South Park Commissioners.

Defendants' theory of the case is that the causes of action arose, and the statute of limitations started running, on the date of the pledging of the bonds on July 22, 1930.

The errors relied upon by plaintiff for reversal are:

1. The court erred in sustaining the motion of defendants to dismiss the suits, and in dismissing the suits on the ground that the causes of action were barred by the statute of limitations.

2. The court erred in holding that the causes of action for conversion accrued, and the statute of limitations started running, prior to the date of the sale of said bonds on June 10, 1931.

3. The court erred in holding that the causes of action for conversion accrued, and the statute of limitations started running prior to the date of the closing of the banks on June 9, 1931.

4. The court erred in holding that the cause of action against defendant Chicago Park District for

money had and received accrued, and the statute of limitations started running prior to the date of the receipt of the proceeds of the sale of said bonds by South Park Commissioners.

The first question presented for our consideration and determination, and which question when decided practically disposes of the entire case, is: On what date did the causes of action arise, or on what date did the statute of limitations start to run?

Plaintiff appellant contends that a pledging of assets by an Illinois bank to secure deposits of a municipality is ultra vires, contrary to public policy and void. There can be no question but that the courts of this State have decided that where a bank pledges its assets to secure a particular deposit, that such action on the part of the bank is ultra vires, illegal and contrary to public policy and is void.

Neither the general Banking Act, the act relating to deposits by the State treasurer, nor any subsequent legislation, shows any intention to confer on banks generally the power to pledge assets to secure deposits; nor is such power necessary to a general banking business, but it is, in fact, contrary to the public policy manifested in statutory provisions for the protection of depositors generally, and as the exercise of such power, when not expressly conferred, is ultra vires and void, a park district which has received a pledge of assets to secure its deposits cannot demand payment of the amount of its deposits before being compelled by the receiver of the bank to surrender the pledged assets. (*Ward v. Johnson,* 95 Ill. 215, distinguished.)

Where a contract of a corporation is ultra vires it is not only voidable but wholly void and of no legal effect and cannot be ratified, nor can performance by the parties give it validity or become the foundation of any right of action upon it, nor is either party, by assenting to it or by acting upon it, estopped to show that it was prohibited. *People v. Wiersema State Bank,* 361 Ill.

75; *Albers v. Continental Ill. Bank & Trust Co.*, 296 Ill. App. 592 (petition for leave to appeal denied); *Albers v. Continental Ill. Bank & Trust Co.*, 296 Ill. App. 596 (petition for leave to appeal denied).

The securities in the instant case were deposited on July 22, 1930, and the suits were commenced on June 4, 1936. The statutory provisions which would be applicable to a cause of action of this kind are set forth in Ill. Rev. Stat. 1939, ch. 83, par. 16, sec. 15, p. 1995 [Jones Ill. Stats. Ann. 107.275], wherein it is stated:

"16. On oral contracts, damages, etc.] § 15. Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

In the case of *Albers v. Continental Ill. Bank & Trust Co.*, 296 Ill. App. 592, the court at p. 595, said: " . . . clearly plaintiff's cause of action is barred by the statute of limitations, which provides that such actions shall be commenced within five years next after the cause of action accrued. Ill. Rev. Stat. 1937, ch. 83, par. 16, sec. 15 [Jones Ill. Stats. Ann. 107.275]. The securities in question to secure the Park District deposit were deposited with the Continental bank October 5, 1931; the Gill agreement was June 15, 1931. The right of action to recover these securities accrued on the dates these securities were thus wrongfully deposited. The instant suit was commenced May 9, 1937, or after the statutory period of five years had expired."

Manifestly, if that is the law of this State, and it appears to be from these decisions, the cause of action in the instant case arose on the date of the wrongful delivery of these securities, which was on, to wit, July 22, 1930. That being true, nearly six years had expired

after the cause of action arose before suit was commenced on, to wit, June 4, 1936.

It is argued by appellant that "the receipt of the pledged securities by the pledgee in this case was not tortious. The Bain Banks voluntarily delivered the securities to the pledgee. True the agreement under which they were delivered was void, but that did not make the possession unlawful."

If the possession of the bonds was wrongful, and it plainly was, for the action in pledging the same was ultra vires, then a cause of action based upon such act would accrue instanter, and the statute must, necessarily and logically run from that date.

In *Chapman v. Lynch,* 156 N. Y. 551, 51 N. E. 275, was a case in which a corporation, which was not a bank, wrongfully received a special deposit under a transaction which the court held the corporation had no power to effect. The court at p. 559, said:

"It appears to us that the corporation, in accepting the funds of the plaintiff, in special account upon deposit, exceeded its corporate power and engaged in a business in which it was not authorized, and that, consequently, its contract with the plaintiff, if such was its nature, was ultra vires; if so, the plaintiff's right of action for the moneys delivered to the corporation at once accrued."

Many other questions are argued and cases cited in support thereof, which questions have to do with other branches of this case, but they are not controlling.

Inasmuch as the facts in this case disclose that the statute of limitations is controlling and that the cause of action commenced to run at the time of the wrongful delivery of these securities, as has been decided by the courts of this State, then it necessarily follows that the cause of action, if any there was, ended with the five-year period expiring July 21, 1935, or five years from the date of the pledging of the bonds on July 22, 1930.

For the reasons herein given the judgment of the superior court in dismissing the suit was correct and the same is hereby affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.