Frank Walton, Appellant, v. Charles H. Albers, Receiver of Basco State Bank, et al., Appellees.

Gen. No. 9,308.

Opinion filed February 24, 1942.

Scofield, Bell & Bell, of Carthage, for appellant.

John W. Williams and Edward S. Martin, both of Carthage, for appellees.

Mr. Justice Fulton delivered the opinion of the court.

This is an appeal from an order or decree of the circuit court of Hancock county, finding that the complaint was without equity and dismissing the suit upon that ground. The action was a bill in the nature of a bill of review, or complaint under the Civil Practice Act and involves the validity of an agreement between the Harmony State Bank of Denver, Illinois, and the Basco State Bank of Basco, Illinois, both in Hancock county, entered into on April 3, 1929.

The transaction concerned a loan made by the Basco Bank to the Harmony Bank and the controversy here arises over the validity of a judgment secured by the receiver of the Basco Bank against the appellant as a stockholder of the Harmony Bank.

The facts show that by the terms of the contract dated April 3, 1929, the Harmony State Bank trans-

ferred, conveyed, assigned, set over and delivered to the Basco Bank, the assets of the Harmony Bank as described in the agreement in consideration of the assumption by the Basco Bank of the liabilities of the Harmony Bank as shown by certain schedules contained in the contract. The assets so transferred consisted of cash and cash balances due from banks' personal loans in the sum of $51,957, which were to pass to the Basco Bank, and as general collateral security personal loans in the amount of $10,808.91, and a judgment note executed by the Harmony State Bank for the sum of $12,500, payable 1½ years after date with interest at 5 per cent from maturity. This note was given to protect the Basco Bank against any loss on account of failure to collect or fully realize on the personal loans, and only so much of the note as should be required to make up the loss, if any, on the personal loans was to be paid by the Harmony Bank.

The Harmony Bank building, a tract of land in North Dakota and some notes were not transferred to the Basco Bank.

The agreement further provided that upon the execution thereof the Harmony Bank would retire from active business immediately and would transact no further business except what should be necessary to carry out the provisions of the contract. The Harmony Bank closed its doors on April 3, 1929, and was never opened for business thereafter.

There were further provisions in the agreement that any liabilities not listed and thereafter discovered should be paid or adjusted by the Harmony Bank; and, that if anything should remain after the liabilities assumed should be paid, the remaining assets should be turned back to an agent or representative of the Harmony Bank for its stockholders.

A further provision of the contract provided that upon the liquidation of the Harmony Bank, it would immediately surrender its charter to the auditor for

cancellation, and that in the interim the Harmony Bank would not change its name, or give to any corporation, partnership or individual, the right to use its name or charter.

The above agreement was entered into prior to amendment of sec. 15, in 1929, which required that such contracts should be approved by the auditor of public accounts, but there was in full force and effect as shown by sec. 15, ch. 16a, Ill. Rev. Stat. 1927, relating to banks and banking, a provision that any bank could determine its affairs, distribute its assets among the stockholders and close up its business upon depositing with the auditor of public accounts an amount of money equal to the whole amount of debts and demands against it.

The record in this case proves conclusively that such deposit was not made by the Harmony State Bank and neither was the approval of the contract ever secured from the auditor.

Subsequently, on May 23, 1932, judgment by confession for $6,645.43, was rendered on said $12,500 note against the Harmony State Bank in favor of the Basco State Bank which latter bank had by that time failed and was in the hands of a receiver. On May 23, 1932, execution was issued on said judgment and returned on August 26, 1932, "No property found." It was claimed that the note had been reduced by the collection of assets to the amount for which the judgment was entered.

On May 26, 1932, a bill was filed in the circuit court of Hancock county, by F. J. Reu, receiver of the Basco Bank, against the stockholders of the Harmony Bank including Frank Walton, the appellant, who was one of the stockholders. The appellant did not appear in person or by attorney.

On August 10, 1938, without notice to the appellant, who had never been defaulted, the plaintiff in that suit, by leave of court, filed an amended complaint, and

again on February 1, 1939, without notice to appellant, but by leave of court, filed a supplemental and secondly amended bill of complaint, and secured a rule on all defendants to answer within 10 days from April 17, 1939. On May 10, 1939, and without notice to appellant, the plaintiff in that suit took judgment by default against appellant, Frank Walton for $1,000, and costs, which was for the full amount of his stock liability.

On January 31, 1940, the appellant filed the present suit in the circuit court of Hancock county, praying that the judgment against him for $1,000, be reviewed, and that said judgment be set aside and reversed.

In the pleadings there is not much controversy as to the facts but as to their effect. The appellant contends primarily that the agreement entered into between the two banks was ultra vires and void; that the Harmony State Bank was wholly without authority to execute and deliver the $12,500 note, and that the Basco State Bank was not in fact a creditor of the Harmony Bank within the meaning of section 6 of Article XI of the Constitution of the State of Illinois, and of sec. 6 of ch. 16½ of the Ill. Rev. Stat. [Jones Ill. Stats. Ann. 10.06]; that the receiver of the Basco Bank is not a creditor of the Harmony Bank within the meaning of the Constitution and statutes above referred to, and that said receiver had no right, power or authority to maintain said suit against appellant. In short appellant's claim is that the contract between the banks was ultra vires; that therefore it was void, and that a judgment arising out of such contract is also void.

The appellees defend the judgment on the ground that it is not void, even though it may be erroneous, if the court had jurisdiction of the person of the appellant and of the subject matter of the suit, and had power to render the particular judgment which it entered, and such a judgment is valid and binding until

reversed. They maintain that the present judgment became a final one and was never appealed from; that the defense of ultra vires must be raised by pleadings and proof and that after final judgment is entered it is too late to raise the question.

We feel that the contract entered into by the two banks on April 3, 1929, was ultra vires, and that the Harmony State Bank had no power or authority to enter into such an agreement. Since the passage of the amendment to section 15 of the Banking Act in 1929, contracts of that character amounting in effect to a liquidation must be approved by the State auditor of public accounts. Many cases have held that agreements of that nature which did not secure the approval of such State officer were ultra vires and void. *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Peoples Trust & Savings Bank of Chicago*, 366 Ill. 366; *First Nat. Bank of Woodlawn v. Watkins*, 295 Ill. App. 572.

Prior to the 1929 amendment sec. 15, ch. 16a, Ill. Rev. Stat. 1927, provided as follows: "Any corporation with banking powers organized in pursuance of any general or special law of the State, or any consolidated corporation with banking powers as provided for by this Act, on depositing with the Auditor an amount of money equal to the whole amount of debts and demands against it, including the expenses of this proceeding, may determine its affairs, distribute its assets among its stockholders, resign its charter or certificate of incorporation, and close up its business, by a resolution passed at a meeting of its stockholders called for such purpose."

Without complying with this statute, we feel the Harmony State Bank had no authority or power to enter into an agreement which contemplated liquidation.

In the case of *Continental Ill. Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank*, 366 Ill. 366, the court very clearly discussed banking powers in similar

situations, as follows: "One dealing with a bank is chargeable with notice of its powers and limitations. We have often held that the banking business is so impressed with a public interest that it is subject to strict regulatory legislation. Private banking is forbidden by law. National and State banks are creatures of the law having no powers but those which the law has conferred upon them. The powers vested in a bank are only such as are expressly granted and as are necessarily implied from the specific grant. Every power not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of a grant operates against the corporation and in favor of the public. If a power claimed is withheld, the withholding is to be regarded as a prohibition against its exercise." *People v. Wiersema State Bank,* 361 Ill. 75.

Seemingly there has been no power given for one bank to liquidate the business and affairs of another bank according to its own will and determination prior to April 3, 1929, except as indicated by statute.

If the agreement in this case was ultra vires and void, which we think it was, then the lending bank did not become a creditor under the meaning of section 6 of Article XI of the Constitution and had no power to bring suit against the stockholders of the Harmony State Bank and the judgment against appellant was not only erroneous but void. "Where a contract of a corporation is ultra vires it is not only voidable but wholly void and of no legal effect and cannot be ratified, nor can performance by the parties give it validity or become the foundation of any right of action upon it, nor is either party, by assenting to it or by acting upon it, estopped to show it was prohibited." *O'Connell v. Chicago Park District,* 305 Ill. App. 294. *People v. Wiersema State Bank,* 361 Ill. 75.

No sequence of events, such as were followed in this case, would have the effect of making a void judgment

valid, or of constituting the judgment against the appellant in the stockholders' suit good. A judgment based upon a void judgment is valueless.

Therefore, the appellant had the legal right to attack the judgment either directly or collaterally. *DeKam v. City of Streator*, 316 Ill. 123. The other questions discussed in the briefs of counsel are not reviewed in this opinion because we feel that the controlling issue is that of ultra vires. This court believes that the contract under date of April 3, 1929, between the two banks was ultra vires and void; that the Basco State Bank was not a creditor of the Harmony State Bank and its judgment against said bank was void, and that the judgment against the appellant in the stockholders' suit was also void. The judgment of the circuit court is therefore set aside and reversed.

*Reversed.*